## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **EDGEFIELD HOLDINGS, LLC,** | ) | |
| | ) | **CIVIL ACTION** |
| **PLAINTIFF,** | ) | |
| | ) | **NO. 1:15-CV-02481-WSD** |
| **vs.** | ) | |
| | ) | |
| **ANNETTE MASON, individually and as** | ) | |
| **trustee, JAMIE MASON HAMIL,** | ) | |
| **K. W. MASON COMPANY, INC.,** | ) | |
| **LONE PINE, INC., MASON CAPITAL,** | ) | |
| **LLC, THE MASON FAMILY** | ) | |
| **TRUST, WAYNE H. MASON, KEITH** | ) | |
| **W. MASON, MFC HOLDINGS, LLC,** | ) | |
| **MASCAP HOLDINGS, LLC,** | ) | |
| **DETENTION MANAGEMENT, LLC,** | ) | |
| **MOORE ROAD, LLC, FOUR K** | ) | |
| **ENTERPRISES, INC., MASON** | ) | |
| **FAMILY MANAGEMENT COMPANY,** | ) | |
| **LLC, ADCA, LLC, DAVID G. HANNA,** | ) | |
| **KIMBERLY HANNA, KRISTY** | ) | |
| **ENGLISH, SHELLY KACZYNSKI,** | ) | |
| **SMSA, LLC, RICHARD TUCKER,** | ) | |
| **FRANK HANNA, JR.,** | ) | |
| **D R I VENTURES, LLC,** | ) | |
| **TLD INVESTMENTS, LP AND** | ) | |
| **LORI SCHOENFUSS.** | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |
| _____ | ) | |

## THIRD AMENDED COMPLAINT

Plaintiff Edgefield Holdings, LLC ("Plaintiff"), by its attorneys, asserts this Third Amended Complaint against Defendants Annette Mason, individually and as trustee ("Annette"), Jamie Mason Hamil ("Jamie"), K. W. Mason Company, Inc. ("K. W. Mason") as trustee for The Mason Family Trust ("MF Trust"), Lone Pine, Inc. ("Lone Pine"), Mason Capital, LLC ("Mason Capital"), MF Trust, Wayne H. Mason ("Wayne"), Keith W. Mason ("Keith"), MFC Holdings, LLC ("MFC LLC"), Mascap Holdings, LLC ("Mascap LLC"), Detention Management, LLC ("Detention LLC"), Moore Road, LLC ("Moore LLC"), Four K Enterprises, Inc. ("Four K"), Mason Family Management Company, LLC ("MF Management"), ADCA, LLC ("ADCA LLC"), David G. Hanna ("David"), Kimberly Hanna ("Kimberly"), Kristy English ("Kristy"), Shelly Kaczynski ("Shelly"), SMSA, LLC ("SMSA"), Richard Tucker ("Tucker"), Frank Hanna, Jr. ("Frank Hanna"), D R I Ventures, LLC ("DRI"), TLD Investments, LP. ("TLD")  and Lori Schoenfuss ("Lori") (collectively, "Defendants"), and alleges as follows:

## NATURE OF ACTION

1.      Plaintiff brings this action, pursuant to the Uniform Fraudulent Transfers Act, as enacted in Georgia in O.C.G.A. § 18-2-70 *et seq.* (the "UFTA"),

2

and the common law of the State of Georgia, for the recovery of many millions of

dollars in securities, cash, corporate interests, and real estate holdings fraudulently

transferred from judgment debtor Wayne and his alter ego, Mason Capital.

      2.     Wayne individually made numerous fraudulent transfers to

Defendants, including as follows:

- Beginning in 2007 and until October 2009, Wayne fraudulently transferred securities and cash held at Merrill Lynch, Pierce, Fenner & Smith, Incorporated ("Merrill Lynch"), BrandBank, and Georgian Bank totaling approximately $18 million, to Annette, Kimberly, Kristy, Jamie, Shelly, KW Mason as trustee for MF Trust, and MF Trust directly.  Of the $16,332,517 in transfers to Annette, Annette transferred approximately $13.8 million to Mascap LLC on September 9, 2009.

- Beginning in 2005 and through 2008, Wayne fraudulently transferred the following real estate-related assets:  (a) his 75% interest in the Beltline Properties (as defined *infra*) to Mason Capital, resulting in the ultimate transfer of approximately $37,800,000 in cash; (b)  20.639233% of his interest in Madison Ventures, Ltd. ("Madison Ventures") and its real estate holdings to KW Mason and MF Trust valued at approximately $11,600,000; and (c) certain real estate holdings with an aggregate value of approximately $65,000,000 to Mason Capital and Lone Pine.

- On information and belief, Wayne fraudulently transferred: (a) from 2007 until 2010, $28 million in cash to fund the acquisition and construction of a residential property, held by Moore LLC and known as "Rose Hill," located at 5200 Moore Road, Suwanee, Georgia 30024 (the "Rose Hill") that is, on information and belief, owned one hundred percent (100%) by Keith or an entity related to Keith; and (b) from 2009 until 2010, $5.7 million as a loan or in exchange for equity interests in Detention LLC.  Despite making these fraudulent

3

transfers, neither Wayne nor his alter ego, Mason Capital, is believed to hold any interests (as an equity holder or secured creditor) in Moore LLC or Detention LLC.

3.     Following its formation and until October 2009, Wayne also directed

his alter ego, Mason Capital, to make fraudulent transfers of cash to Defendants,

including as follows:

- In April 2009, from accounts held at Georgian Bank (the predecessor to Plaintiff): (a) $580,000 in cash to David and Kimberly; (b) $586,250 in cash to Jamie; (c) $580,000 in cash to Keith; and (d) $586,250 in cash to Kristy.  These fraudulent transfers alone total $2,338,500.

- From November 2008 to October 2009, from accounts held at Branch Banking and Trust Company ("BB&T"): (a) $3,791,897 in cash to Lone Pine; and (b) $1,500,000 in cash to MFC LLC.

4.     Wayne, either individually or through his alter ego, Mason Capital,

fraudulently transferred (a) membership interests in various real estate entities

valued at over $100 million to Mason Capital, Lone Pine, and KW Mason and MF

Trust, and (b) as much as approximately $66 million in total cash and securities to

Annette, Jamie, Lone Pine, MFC, KW Mason, MF Trust, Moore LLC, Detention

LLC, Four K, MF Management, Mascap LLC, ADCA LLC, Keith, David,

Kimberly, Kristy and Shelly.

5.     Wayne's fraudulent transfer to Mason Capital of his seventy-five

percent (75%) interest in the Beltline Properties (as defined *infra*) at some time

between August 2007 and February 2008 is particularly noteworthy.  This fraudulent transfer wound up putting approximately $29 million, or $7.25 million each, in the pockets of each of Wayne's four children—Keith, Jamie, Kimberly, and Kristy (not including the additional $12.6 million that Keith pocketed from the Beltline)—in hopes of placing the funds beyond the reach of Wayne's creditors.

6.      During the same period of time as the fraudulent transfers described herein, Wayne falsely reported his personal net worth to induce his lenders— including the predecessors-in-interest to Plaintiff—to lend hundreds of millions of dollars to him and his various business entities.  By way of example, in February 2007, Wayne reported a net worth of $169,801,370.00 based on assets of $210,898,327 and liabilities of $41,096,957.  But, as evidenced by his actual personal financial statement ("PFS") provided to his lenders, Wayne in fact had total liabilities of $248,732,396 for all of his real estate investments.  Similarly, in November 2008, Wayne reported an alleged net worth of $125,135,067 based on alleged assets of $188,642,049.00 and alleged liabilities of $63,506,982, when his actual total liabilities were $176,781,500 for all of his real estate investments.

7.      Beginning in 2009, Wayne ceased paying many of his lenders and, on information and belief, informed them that he had no assets available to pay them. To support his claimed lack of assets, Wayne began reporting negative net worth

5

beginning in March 2010, when he provided certain of his lenders with an updated PFS showing that his *reported* net worth declined from $125,135,067 as of November 2008 to ($223,701,843.00) as of March 2010.  Most importantly, instead of reflecting personal liabilities based on his percentage ownership in each of his real estate investments, Wayne began to report the entirety of these guaranty obligations as his *own* personal obligations (rather than prorating the liabilities like he did in 2007 and 2008).

8.     During this same period of time and as described above and herein, Wayne, either individually or through his alter ego, Mason Capital, began fraudulently transferring his real estate investments and liquid assets to his family members or entities owned by his family members (but ultimately, on information and belief, controlled by Wayne).  Wayne fraudulently transferred these assets - at a time when his real estate projects (that were funded by the loans he personally guaranteed) were decreasing rapidly in value - to prevent his lenders from being able to obtain his personal assets to repay his liabilities.

9.     Additionally, Wayne, either individually or through his alter ego, Mason Capital, made these fraudulent transfers without receiving fair consideration (or any consideration, for that matter) at a time when Wayne was insolvent or was thereby rendered insolvent.  As a result, Plaintiff is entitled to

6

avoid and recover all of the fraudulent transfers, from all mediate or final transferees, as well as post-judgment interest (as applicable) and its reasonable attorney's fees, pursuant to the UFTA, as well as the common law of the State of Georgia.

10.     Finally, Wayne orchestrated and conspired, through Tucker (his longtime friend), SMSA (an entity owned and controlled by Tucker), Frank Hanna (a friend of Wayne and the father of David Hanna, Wayne's son-in-law) through his entities DRI and TLD, and Lori (a longtime employee of Wayne and the Mason Family Management Company, LLC), the acquisition of two judgments/notes from creditors Synovus Bank and Wells Fargo Bank, N.A. ("Wells Fargo").

11.     On information and belief, Wayne, either individually or through one of the Defendant-entities named in this Complaint, or perhaps through some other entity, provided the funding to allow Tucker and SMSA and TLD to acquire the Synovus Judgment and Frank Hanna and DRI to acquire the Wells Fargo Judgment.

12.     Despite funding these acquisitions, Wayne also provided alleged "consideration" to SMSA and DRI/TLD as judgment creditors in order to allegedly repay these obligations.  Of course, SMSA and DRI/TLD never intended to collect on the judgments that, through them, Wayne purchased.

7

22132142v.1

13.     On information and belief, however, Wayne provided "value" to each of SMSA, TLD and DRI as a means to place more of his assets outside the reach of his legitimate creditors.  In exchange for receipt of such value from Wayne, neither SMSA, TLD  nor DRI provided any value to Wayne or his actual creditors (as Wayne himself funded the initial acquisition of the Judgment).

14.     Moreover, on information and belief, Wayne had these friendly entities acquire these judgments in an attempt to create enforceable judgment liens against his remaining assets in hopes of further blocking his legitimate creditors from recovering on or otherwise enforcing their rights.  Wayne instructed at least one of these judgment creditors to seek a *fieri facias* ("FiFa") under Georgia law, which FiFa would create a lien against Wayne and any property he owns.  Wayne, through Lori Schoenfuss, specifically instructed the judgment creditors to record FiFas in certain Georgian counties to create "superior" liens purportedly superior to other creditors.  Of course, neither Wayne nor these judgment creditors ever intended to act on the FiFas.

15.     Accordingly, any transfers "satisfying" the judgment creditors and any liens obtained by these judgment creditors against Wayne or his assets should be avoided as fraudulent transfers made with the actual intent to hinder, delay, or defraud Wayne's present and future creditors.

8

16.     Moreover, each of Wayne, Tucker, SMSA, Frank Hanna, DRI, TLD, and Lori are liable for civil conspiracy on account of their efforts to, *inter alia*, conspire and act in concert to defraud Wayne's legitimate creditors.

## THE PARTIES

17.     Plaintiff is a Delaware limited liability company.  Plaintiff's sole member is Rialto Capital Advisors, LLC, a Delaware limited liability company whose sole member is Rialto Capital Management LLC.  Rialto Capital Management, LLC is a Delaware limited liability company whose sole member is Rialto Holdings, LLC.  Rialto Holdings, LLC is a Delaware limited liability company whose sole member is Lennar Corporation, a Delaware corporation with its principal place of business in Miami, Florida.

18.     Plaintiff is a citizen of the States of Delaware and Florida for purposes of establishing diversity jurisdiction in accordance with 28 U.S.C. § 1332.

19.     Wayne is an individual whose domicile is located at 2096 Oak Road, Snellville, Georgia 30078.

20.     Pursuant to 28 U.S.C. § 1348, Wayne is a citizen of the State of Georgia for purposes of establishing diversity jurisdiction in accordance with 28 U.S.C. § 1332.

22132142v.1

21. Annette is an individual whose domicile is located at 2096 Oak Road, Snellville, Georgia 30078.

22. At all times relevant hereto, Annette was the wife of Wayne and, thus, an insider with respect to Wayne.

23. Pursuant to 28 U.S.C. § 1348, Annette is a citizen of the State of Georgia for purposes of establishing diversity jurisdiction in accordance with 28 U.S.C. § 1332.

24. Jamie is an individual whose domicile is located at 1405 Carrington Court, Lawrenceville, Georgia 30044.

25. At all times relevant hereto, Jamie was the daughter of Wayne and, thus, an insider with respect to Wayne.

26. Pursuant to 28 U.S.C. § 1348, Jamie is a citizen of the State of Georgia for purposes of establishing diversity jurisdiction in accordance with 28 U.S.C. § 1332.

27. K.W. Mason is a corporation formed under the laws of the State of Nevada. On information and belief, the principals of K. W. Mason are as follows: Joshua C. Miller, President; Keith, Treasurer and Director; Monte L. Miller, Secretary; and David Hanna, Director. K.W. Mason may be served with process

care of Fennemore Craig, P.C., 300 S. Fourth Street, Suite 1400, Las Vegas, Nevada 89101.

28.     Upon information and belief, K.W. Mason is an insider with respect to Wayne because his son Keith is a principal and officer of K.W. Mason.

29.     K.W. Mason is a citizen of the State of Nevada for purposes of establishing diversity jurisdiction in accordance with 28 U.S.C. § 1332.

30.     Lone Pine is a Georgia corporation with its principal place of business located at 1960 Satellite Boulevard, Suite 3000, Duluth, Georgia 30097.  Lone Pine may be served with process care of Thomas J. Andersen at 1960 Satellite Boulevard, Suite 4000, Duluth, Georgia 30097.

31.     Lone Pine is an insider with respect to Wayne.

32.     Lone Pine is a citizen of the State of Georgia for purposes of establishing diversity jurisdiction in accordance with 28 U.S.C. § 1332.

33.     Mason Capital is a Georgia limited liability company with its principal place of business located at 1960 Satellite Boulevard, Suite 3000, Duluth, Georgia 30097.  Mason Capital may be served with process care of Brad Carr (registered agent) at 1960 Satellite Boulevard, Suite 4000, Duluth, Georgia 30097.

11

34.     Upon information and belief, Wayne is a manager, member or owner of Mason Capital, and therefore, Mason Capital is an insider with respect to Wayne.

35.     Mason Capital is a citizen of the State of Georgia for purposes of establishing diversity jurisdiction in accordance with 28 U.S.C. § 1332.

36.     MF Trust is a trust formed under the law of the State of Nevada.  MF Trust may be served with process care of Fennemore Craig, P.C., 300 S. Fourth Street, Suite 1400, Las Vegas, Nevada 89101.

37.     Upon information and belief, MF Trust is an insider with respect to Wayne because MF Trust benefits Wayne's relatives and his son Keith is a principal of the trustee for the Trust.

38.     MF Trust is a citizen of the State of Nevada for purposes of establishing diversity jurisdiction in accordance with 28 U.S.C. § 1332.

39.     Keith is an individual whose domicile is located at 565 Chestnut Rose Lane, Atlanta, Georgia 30327.

40.     At all times relevant hereto, Keith was the son of Wayne and, thus, an insider with respect to Wayne.

41.   Pursuant to 28 U.S.C. § 1348, Keith is a citizen of the State of Georgia for purposes of establishing diversity jurisdiction in accordance with 28 U.S.C. § 1332.

42.   MFC LLC is a Georgia limited liability company with its principal place of business located at 1960 Satellite Boulevard, Suite 3000, Duluth, Georgia 30097.  MFC LLC may be served with process care of Frank Hendrick (registered agent) at 3282 Northside Parkway NW, The Rinaldi, Ste. 250, Fulton, Atlanta, GA, 30327.

43.   MFC LLC is a citizen of the State of Georgia for purposes of establishing diversity jurisdiction in accordance with 28 U.S.C. § 1332.

44.   Mascap LLC is a limited liability company formed under the laws of the State of Nevada.  On information and belief, the managing members of Mascap LLC are as follows:  Mason Capital, KW Mason, and Annette.  Mascap LLC may be served with process care of Fennemore Craig, P.C., 300 S. Fourth Street, Suite 1400, Las Vegas, Nevada 89101.  Mascap LLC is a citizen of the State of Nevada for purposes of establishing diversity jurisdiction in accordance with 28 U.S.C. § 1332.

45.   Detention LLC is a Georgia limited liability company with its principal place of business located at 5 Concourse Parkway, Suite 3000, Atlanta,

13

GA, 30328.  Detention LLC may be served with process care of John Flanders Kennedy (registered agent) at 231 Riverside Drive, Macon, GA, 31201.

46.   Detention LLC is a citizen of the State of Georgia for purposes of establishing diversity jurisdiction in accordance with 28 U.S.C. § 1332.

47.   Moore LLC is a Georgia limited liability company with its principal place of business located at One Sugarloaf Centre, 1960 Satellite Blvd., Ste. 3000, Duluth, GA, 30097.  Moore LLC may be served with process care of Frank Hendrick (registered agent) at 3282 Northside Parkway NW, The Rinaldi, Ste. 250, Fulton, Atlanta, GA, 30327.

48.   Moore LLC is a citizen of the State of Georgia for purposes of establishing diversity jurisdiction in accordance with 28 U.S.C. § 1332.

49.   Four K is a Georgia corporation with its principal office at One Sugarloaf Centre, 1960 Satellite Blvd., Ste. 3000, Duluth, GA, 30097.  Four K may be served with process care of Keith (registered agent).

50.   Four K is a citizen of the State of Georgia for purposes of establishing diversity jurisdiction in accordance with 28 U.S.C. § 1332.

51.   MF Management is a Georgia limited liability company with its principal office at One Sugarloaf Centre, 1960 Satellite Blvd., Ste. 3000, Duluth, GA, 30097.  MF Management may be served with process care of Andersen, Tate

14

& Carr, P.C. (registered agent) at 1960 Satellite Boulevard, Suite 4000, Duluth, Georgia 30097.

52.     MF Management is a citizen of the State of Georgia for purposes of establishing diversity jurisdiction in accordance with 28 U.S.C. § 1332.

53.     ADCA LLC is a Georgia limited liability company with its principal place of business located at 1550 North Brown Road, Suite 125, Lawrenceville, GA, 30043.  ADCA LLC may be served with process care of R. Lee Tucker Jr. (registered agent) at 1550 North Brown Road, Suite 125, Gwinnett, Lawrenceville, GA, 30043.  ADCA LLC is a citizen of the State of Georgia for purposes of establishing diversity jurisdiction in accordance with 28 U.S.C. § 1332.  Upon information and belief, ADCA LLC was an insider with respect to Wayne.  Keith is an owner and/or officer of ADCA.

54.     David is an individual whose domicile is located at 4730 Harris Trail, Atlanta, Georgia 30327.

55.     At all times relevant hereto, David was the son-in-law of Wayne and, thus, an insider with respect to Wayne.

56.     Pursuant to 28 U.S.C. § 1348, David is a citizen of the State of Georgia for purposes of establishing diversity jurisdiction in accordance with 28 U.S.C. § 1332.

15

57.     Kimberly is an individual whose domicile is located at 4730 Harris Trail, Atlanta, Georgia 30327.

58.     At all times relevant hereto, Kimberly was the daughter of Wayne and, thus, an insider with respect to Wayne.

59.     Pursuant to 28 U.S.C. § 1348, Kimberly is a citizen of the State of Georgia for purposes of establishing diversity jurisdiction in accordance with 28 U.S.C. § 1332.

60.     Kristy is an individual whose domicile is located at 884 Millbrae Court, Lawrenceville, Georgia 30044.

61.     At all times relevant hereto, Kristy was the daughter of Wayne and, thus, an insider with respect to Wayne.

62.     Pursuant to 28 U.S.C. § 1348, Kristy is a citizen of the State of Georgia for purposes of establishing diversity jurisdiction in accordance with 28 U.S.C. § 1332.

63.     Shelly is an individual whose domicile is located at 3970 Fairlane Drive, Dacula, Georgia 30019.

64.     At all times relevant hereto, Shelly was the employee of Wayne and his related entities and, thus, an insider with respect to Wayne.

16

65.     Pursuant to 28 U.S.C. § 1348, Shelly is a citizen of the State of Georgia for purposes of establishing diversity jurisdiction in accordance with 28 U.S.C. § 1332.

66.     Tucker is an individual whose domicile is located at 4475 Whitestone Way, Suwanee, GA 30024-7593.

67.     Pursuant to 28 U.S.C. § 1348, Tucker is a citizen of the State of Georgia for purposes of establishing diversity jurisdiction in accordance with 28 U.S.C. § 1332.

68.     SMSA is a Georgia  limited liability company that was formed on or about October 28, 2013 and has its principal office located at 1960 Satellite Blvd., Suite 3600, Duluth, Georgia, 30097.  SMSA may be served with process care of Jeffrey R. Mahaffey (registered agent), Mahaffey Pickens Tucker, 1550 North Brown Road, Suite 125, Lawrenceville, GA 30043.

69.     SMSA is a citizen of the State of Georgia for purposes of establishing diversity jurisdiction in accordance with 28 U.S.C. § 1332.

70.     At all times relevant hereto, Tucker was the managing member of SMSA.

71.     Frank Hanna is an individual whose domicile is located at 4310 Garmon Road NW, Atlanta, GA 30327-3832.

17

72.     Pursuant to 28 U.S.C. § 1348, Frank Hanna is a citizen of the State of Georgia for purposes of establishing diversity jurisdiction in accordance with 28 U.S.C. § 1332.

73.     D R I Ventures, LLC ("DRI") is a Georgia limited liability company and has its principal office located at Summerville, GA 30361.  DRI may be served with process care of  CT Corporation (registered agent) at 1201 Peachtree Street NE, Atlanta, GA 30361.

74.     DRI is a citizen of the State of Georgia for purposes of establishing diversity jurisdiction in accordance with 28 U.S.C. § 1332.

75.     TLD Investments, LP ("TLD") is a Georgia limited partnership and has its principal office at 5 Concourse Parkway NE, Suite 300, Atlanta, GA 30328. TLD may be served with process care of CT Corporation (registered agent) at 1201 Peachtree Street NE, Atlanta, GA 30361.

76.     TLD is a citizen of the State of Georgia for purposes of establishing diversity jurisdiction in accordance with 28 U.S.C. § 1332.

77.     Lori Schoenfuss ("Lori") is an individual whose domicile is located at 745 Woodbrook Way, Lawrenceville, GA 30043-6854.

22132142v.1

78.     Pursuant to 28 U.S.C. § 1348, Lori is a citizen of the State of Georgia for purposes of establishing diversity jurisdiction in accordance with 28 U.S.C. § 1332.

## VENUE AND JURISDICTION

79.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), as:  (a) the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs; and (b) Plaintiff is diverse in citizenship from each of Defendants.

80.     Venue over all Defendants is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) as numerous Defendants are located in counties located within in this District.

81.     Venue over all Defendants is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to the claims occurred in this District.

82.     Venue over all Defendants is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the property that is the subject of this action was and is situated in this District.

22132142v.1

## RELEVANT FACTS

**Judgment Against Wayne**

83.     On October 16, 2014, First Citizens Bank and Trust Company ("First Citizens") obtained a judgment (the "Judgment") against Wayne in the State Court of Gwinnett County, State of Georgia in the total amount of $5,000,000.  The Judgment was not entered as a result of default based upon non-appearance or confession of judgment.

84.     On or about April 30, 2015, Plaintiff purchased the Judgment from First Citizens.  In connection with such purchase, First Citizens executed and delivered to Plaintiff, among other things, an Assignment of Judgment.

**Plaintiff Is A Successor-in-interest To FDIC**

85.     On Friday, September 25, 2009, the Georgia Department of Banking and Finance closed Georgian Bank, and the Federal Deposit Insurance Corporation ("FDIC") was named Receiver.

86.     On September 25, 2009, FDIC, as receiver, transferred substantially all of the loans of Georgian Bank to First Citizens.

87.     As a result of and in connection with such transfer, FDIC transferred a guaranty made by Wayne in favor of Georgian Bank to First Citizens.  Wayne made such guaranty in favor of First Citizens in connection with loan facilities

22132142v.1

made by Georgian Bank to, *inter alia*, Parkway Associates, LLC, St. Andrews

Partners, LLC, MV Capital, LLC, Chestatee Partners, LLC, and Madison Ventures.

88.     As a result of the assignment of the Judgment by First Citizens to

Plaintiff, Plaintiff is a successor-in-interest to FDIC.

89.     Pursuant to 12 U.S.C. § 1821(d)(14)(B), FDIC's right to bring a claim

for, *inter alia*, fraudulent transfers under the UFTA and Georgia common law,

began to run anew as of September 25, 2009.

90.     Pursuant to 12 U.S.C. § 1821(d)(14)(A), the deadline to bring a claim

seeking to recover fraudulent transfers is September 25, 2015, which is six years

from September 25, 2009.

91.     As a successor-in-interest to FDIC, Plaintiff is entitled to apply the

extended limitations period provided for in 12 U.S.C. § 1821(d)(14) with respect to

its efforts to recover on the Judgment.

**The Judgment Remain Unpaid**

92.     The Judgment remain unsatisfied in whole, and the total amount of

$5,000,000 remains unpaid.  Enforcement of the Judgment has not been stayed, nor

is the Judgment the subject of any pending appeal.

21

22132142v.1

**Wayne's Extensive Loan Obligations And Personal Guaranties**

93.    Wayne, a one-time prominent real estate developer and investor, personally guaranteed hundreds of millions of dollars in loan obligations to numerous financial institutions.  Indeed, in March 2010, Wayne reported that he owed almost $300 million in loans and personal guaranties.

94.    In connection with his personal guaranties, Wayne reported, *inter alia*, the various assets described herein to his lenders in order to induce them to loan hundreds of millions of dollars to him and his various business entities.

95.    Wayne's various lenders relied upon his personal guaranties, his alleged assets, including investments in securities included on his personal financial statements, and his alleged net worth.

96.    Notwithstanding his personal guaranties, Wayne set forth on a purposeful scheme to transfer substantial assets to his family members and related entities over which Wayne retains control in an effort to conceal and protect those assets from his legitimate creditors.

**Wayne's Direct Transfers of Cash and Securities To Certain Defendants**

97.    Beginning in 2007 and until August 2009, and notwithstanding his substantial debts to the lenders referenced above, Wayne personally transferred at least $18 million in cash and securities from accounts held at Merrill Lynch

22

(account numbers ending in 0369 and 9889), BrandBank (account numbers ending

5020 and 0539), and Georgian Bank (account number ending 2276) as follows

(collectively, the "Mason Personal Cash Transfers"):[1]

| Paragraph No. | Transfer To | Date | Value of Securities / Cash on Transfer Date |
|---|---|---|---|
| 80(a) | Kimberly | 4/24/2007 | $110,000 |
| 80(b) | Jamie | 6/25/2007 | $37,500 |
| 80(c) | Kristy | 6/25/2007 | $100,000 |
| 80(d) | KW Mason as trustee | 11/16/2007 | 1,119,000 |
| 80(e) | Annette | 12/12/2007 | $7,305,853 |
| 80(f) | Jamie | 3/28/2008 | $80,800 |
| 80(g) | Shelly | 4/22/2008 | $100,000 |
| 80(h) | Shelly | 5/15/2008 | $100,000 |
| 80(i) | Shelly | 6/10/2008 | $50,000 |
| 80(j) | Annette as trustee | 6/23/2008 | $738,839 |
| 80(k) | Shelly | 7/18/2008 | $50,000 |
| 80(l) | MF Trust | 8/29/2008 | 150,000 |
| 80(m) | MF Trust | 9/3/2008 | 150,000 |
| 80(n) | Shelly | 9/17/2008 | $6,000 |
| 80(o) | Annette as trustee | 1/29/2009 | $3,497,124 |
| 80(p) | Annette (individually) | 5/4/2009 | $21,648 |
| 80(q) | Annette (individually) | 5/4/2009 | $4,381 |
| 80(r) | Annette (individually) | 5/4/2009 | $224,626 |
| 80(s) | Annette (individually) | 5/5/2009 | $2,660,000 |
| 80(t) | Annette (individually) | 5/6/2009 | $154 |
| 80(u) | Annette (individually) | 5/26/2009 | $549,000 |
| 80(v) | Annette (individually) | 6/25/2009 | $351,679 |

[1]    Investigation continues as to additional transfers made directly by Wayne.

23

| Paragraph No. | Transfer To | Date | Value of Securities / Cash on Transfer Date |
|---|---|---|---|
| 80(w) | Annette (individually) | 6/25/2009 | $8,952 |
| 80(x) | Annette (individually) | 8/5/2009 | $970,262 |
| 80(y) | **Total** | | **$18,385,818** |

98.     The BrandBank account ending in 5020 lists Wayne, as well as Annette, Keith, Shelly, and Lori L. Schoenfuss, as either account holders or authorized signatories on the account.  On information and belief, Wayne, besides owning this account, also controlled this account and directed when and if transfers were made from this account.

99.     Based on the foregoing, Wayne made each and every one of the transfers between April 24, 2007 and August 5, 2009.  Wayne transferred the securities and cash from accounts held in his name into accounts held in certain Defendants' names as identified above.

100.     On September 9, 2009, after certain of the investments transferred to Annette were liquidated or reinvested into other securities, Annette transferred $13,752,472.80 to Mascap LLC.  On information and belief and as of July 2015, of the original $16 million transferred by Wayne to Annette, only $1.7 million

24

remains in Annette's accounts at Merrill Lynch, and no funds remain in the Merrill Lynch accounts under Jamie's name.

101.   Additionally, on information and belief, Mascap LLC and ADCA LLC are subsequent and/or final transferees of funds from Wayne, and such subsequent transfers to Mascap LLC and ADCA LLC are referred to herein as part of the Mason Personal Cash Transfers.

102.   Transfers to Mascap LLC were, essentially, transfers to Annette (ignoring the reality that Wayne controls Mason Capital, Mascap LLC, Lone Pine, MFC LLC, and all the other Wayne-related entities).  Pursuant to the Mascap LLC operating agreement, dated February 20, 2009, Annette held a 99.98337% economic interest in Mascap LLC, while K W Mason and Mason Capital held .00016% and .01647% economic interests, respectively.

103.   Following its acquisition of the Judgment in April 2015, Plaintiff discovered these transfers in the course of its investigation of Wayne's assets.  On information and belief, neither Wayne nor any of Defendants disclosed these transfers to any predecessors of Plaintiff or any of their agents or representatives.

**Wayne's Real Estate Transfers to MF Trust**

104.   In or about August 2007, following his realization of an impending real estate crisis that would become the Great Recession, and in anticipation and

preparation for the various loan defaults that would ensue, Wayne formed MF

Trust.  Wayne's son Keith is a principal of MF Trust.

105.   Following MF Trust's formation, no earlier than August 10, 2007, and

no later than December 31, 2007, Wayne transferred approximately 20.639233%

of his ownership interests in Madison Ventures to MF Trust (the "<u>Trust</u>

<u>Transfers</u>").

106.   Madison Ventures is a Georgia corporation with its principal place of

business in the State of Georgia.  Wayne is the CEO and CFO of Madison

Ventures.

107.   The value as of 2007 of this interest in Madison Ventures, based upon

Wayne's own personal financial statements used by Wayne to induce lenders to

extend credit to Wayne and his entities, was approximately $11,600,000.

108.   On account of Wayne's transfer to MF Trust, for which transfer

Wayne received no value (let alone reasonably equivalent value), MF Trust

received a value of approximately $11,600,000—funds that could and should have

been used to repay Wayne's substantial creditors.

109.   Following its acquisition of the Judgment in April 2015, Plaintiff

discovered these specific transfers in the course of its investigation of Wayne's

assets.  On information and belief, neither Wayne nor any of Defendants disclosed

these transfers to any predecessors of Plaintiff or any of their agents or representatives.

**Wayne's Real Estate Transfers to Lone Pine**

110.   Following his realization of an impending real estate crisis that would become the Great Recession, and in anticipation and preparation for the various loan defaults that would ensue, Wayne began transferring substantial real estate-related assets to Lone Pine.

111.   Upon information and belief, Wayne continues to own or control, or through family members of related entities owns or controls, one hundred percent (100%) of the ownership interests in Lone Pine.

112.   More specifically, Wayne effectuated transfers to Lone Pine of his membership interests in certain Georgia limited liability companies or property held in his name.  Such transfers included (collectively, the "Lone Pine Real Estate Transfers"):

| Paragraph No. | Property Transferred or Name of Entity Transferred (if applicable) | % Interest Transferred |
|---|---|---|
| 95(a) | 400 Pilgrim, LLC membership interests | 33.33% |
| 95(b) | 400 Pilgrim II, LLC membership interests | 33.33% |
| 95(c) | Austin Garner, LLC membership interests | 100% |
| 95(d) | Brisbane II, LLC membership interests | 33.33% |

27

| Paragraph No. | Property Transferred or Name of Entity Transferred (if applicable) | % Interest Transferred |
|---|---|---|
| 95(e) | Campbell Road, LLC membership interests | 33.33% |
| 95(f) | Lenox-Canterbury II, LLC membership interests | 100% |
| 95(g) | Palisades West Paces, a 46,000 sq. ft. medical condominium located in Palisades West Paces, Fulton County, GA | 100% |
| 95(h) | Rockhouse Ventures, LLC membership interests | 100% |
| 95(i) | Stonecrest Atlanta, LLC membership interests | 100% |

113.   Each of these transfers was described by Wayne in his and/or Mason

Capital's financial statements.[2]  On information and belief and based on the

records available to Plaintiff, each of these transfers occurred on or around

February 28, 2007.

114.   On account of Wayne's transfers to Lone Pine, for which transfers

Wayne received no value (let alone reasonably equivalent value), Lone Pine

received approximately $22,000,000 in assets and funds—assets and funds that

could and should have been used to repay Wayne's substantial creditors.

---

[2]      Plaintiff has described these entities and properties transferred by Wayne to Mason Capital based on personal financial statements submitted by Wayne to his lenders.  Upon obtaining additional information as to the exact names and addresses (as well as the specific dates of transfers) of the properties transferred by Wayne to Mason Capital, Plaintiff will supplement or amend its Complaint.

115.    Following its acquisition of the Judgment in April 2015, Plaintiff discovered these specific transfers in the course of its investigation of Wayne's assets.  On information and belief, neither Wayne nor any of Defendants disclosed these transfers to any predecessors of Plaintiff or any of their agents or representatives.

**Wayne Forms Mason Capital As His Personal "Piggybank"**

116.    On or about August 3, 2007, Wayne formed Mason Capital, a Georgia limited liability company.  Wayne, Madison Ventures, and Four K (a Georgia corporation with, on information and belief, Keith, Jamie, Kimberly, and Kristy as its shareholders) were the initial members of Mason Capital.

117.    In or about 2010, Wayne relinquished to Keith the roles of CEO, CFO, and registered agent of Four K.

118.    After its formation and at all relevant times, Mason Capital was an alter ego of Wayne.  Despite holding a miniscule (7.54% as of September 1, 2008) financial ownership interest in Mason Capital, Wayne held 100% of the voting interests in Mason Capital.  On information and belief, in 2008, Wayne informed his lenders that all assets of Mason Capital were available to repay them *despite* his very limited beneficial ownership interest in such entity.

29

119.   Since its corporate formation, a unity of interest and ownership has existed such that any separateness between Mason Capital and Wayne has ceased to exist, in that Wayne has completely controlled, dominated, managed and operated Mason Capital since its formation for his own personal benefit.

120.   For example, Wayne was the sole holder of Class A shares of Mason Capital, providing him with sole voting rights with respect to Mason Capital.  With respect to the economic interests in Mason Capital, Wayne initially held 25.52%, with Madison Ventures holding 70.53% and Four K holding 3.95%.

121.   On or about September 1, 2008, the members of Mason Capital entered into an amended and restated operating agreement.  As of that date, Wayne, Madison Ventures, Four K, MF Trust, and Lone Pine were members of Mason Capital.  As of September 1, 2008, Wayne was the sole holder of Class A shares of Mason Capital, providing him with sole voting rights with respect to Mason Capital.  With respect to the economic interests in Mason Capital, Wayne held only 7.54%, with Madison Ventures holding 59.3%, Four K holding 3.32%, MF Trust holding 21.45%, and Lone Pine holding 8.39%.

122.   Nevertheless, Wayne continued to inform his lenders - including Georgian Bank - that assets and cash held by Mason Capital were available to pay Wayne's loan and guaranty obligations.

30

123.   Mason Capital is, and at all times herein mentioned was, a mere shell, instrumentality and conduit through which Wayne carried on his own activities in the corporate name, exercising such complete control and dominance of the activities of Mason Capital to such extent that any individuality or separateness of Mason Capital and Wayne does not and, at all relevant times mentioned herein, did not exist.

124.   Wayne utilized Mason Capital in furtherance of his scheme to defraud creditors.  Wayne effectuated transfers of ownership interests in Mason Capital to its other members (entities principally benefitting Wayne's children) for little or no consideration in an effort to shield Wayne's assets from his legitimate creditors. Additionally, as set forth below, Wayne also directed Mason Capital to transfer substantial assets to other entities and to his children directly.

125.   To date, Wayne continues to exercise complete control over Mason Capital.

126.   Keith, on information and belief, currently acts as the nominal manager or managing member of Mason Capital.  On information and belief, Keith has run Mason Capital's affairs (if not, in fact, run by Wayne directly) entirely under Wayne's direction and for Wayne's benefit.  Following the nominal transfer of ownership, Wayne continued to direct Mason Capital's operations. His control

31

of Mason Capital's finances and operations is illustrated by, *inter alia*, the transfer of funds from Mason Capital's accounts to various entities, such as Moore LLC, and individuals, such as his children, as well as Wayne's retention of all documents, to the exclusion of Keith and others, regarding Mason Capital's (and all other entities') operations.

127.   Adherence to the fiction of the separate existence of Mason Capital as an entity distinct and apart from Wayne would permit an abuse of the corporate privilege and would promote injustice in that Wayne has used Mason Capital as a means of financing, supporting, and enabling his making of investments and transferring of funds outside the reach of his creditors, including Plaintiff.

**Wayne's Real Estate Transfers to Mason Capital**

128.   On or about August 14, 2007, following his realization of an impending real estate crisis that would become the Great Recession, and in anticipation and preparation for the various loan defaults that would ensue, Wayne formed Mason Capital.

129.   Upon information and belief, Wayne continues to own or control, or through family members or related entities owns or controls, one hundred percent (100%) of the ownership interests in Mason Capital.

32

130.   Following such formation on or about August 14, 2007, and prior to February 1, 2008, Wayne transferred real estate holdings and other assets to Mason Capital that he valued at approximately $70,000,000.

131.   More specifically, and in addition to the transfers involving the Beltline Project described below, Wayne effectuated transfers to Mason Capital of his membership interests in certain Georgia limited liability companies or property held in his name.  Such transfers included (collectively, the "Mason Capital Real Estate Transfers"):

| Paragraph No. | Property Transferred or Name of Entity Transferred (if applicable) | % Interest Transferred |
|---|---|---|
| 114(a) | 2470 Cheshire Bridge Partners, LLC membership interests | 50% |
| 114(b) | Baxley Ridge Builders, LLC membership interests | 33.33% |
| 114(c) | Baxley Ridge Investments, LLC membership interests | 33.33% |
| 114(d) | Baxley Ridge, LLC membership interests | 33.33% |
| 114(e) | Black Banks River Residences, LLC membership interests | unknown |
| 114(f) | Commerce Land Holdings, LLC membership interests | 75% |
| 114(g) | Commerce Land Holdings II, LLC membership interests | 50% |
| 114(h) | Lakes Office, LLC membership interests | 50% |
| 114(i) | Metro Land Investors, LLC membership interests | 100% |

33

| Paragraph No. | Property Transferred or Name of Entity Transferred (if applicable) | % Interest Transferred |
|---|---|---|
| 114(j) | MKB Properties, LLC membership interests | 80% |
| 114(k) | MMH Ventures, LLC membership interests | 25% |
| 114(*l*) | Peachtree Hills Holdings, LLC membership interests | 50% |
| 114(m) | Property including 1.38 acres at Gravit Road, Gwinnett County, Georgia | 100% |
| 114(n) | Property including 13 lots at Harbour Oaks, Gwinnett County, Georgia | 100% |
| 114(o) | Property including 350 acres in Braselton, Jackson County, Georgia | 100% |
| 114(p) | Property including 45 acres in the Surrey Farms subdivision in Gwinnett County, Georgia | 100% |
| 114(q) | Property located at Hwy 120 and Sugarloaf CVS ground lease, which included a CVS ground lease and adjoining 1.5 acre site in Gwinnett County, Georgia | 100% |
| 114(r) | Property located at Old Norcross and Cruse Road | 100% |
| 114(s) | Property located at Satellite Blvd. (unknown acreage) | unknown |
| 114(t) | Solid Gold, LLC membership interests | 50% |
| 114(u) | SPG Adairsville, LLC membership interests | 50% |
| 114(v) | SPG Braselton One, LLC membership interests | 50% |
| 114(w) | SPG Northport Two, LLC membership interests | 50% |
| 114(x) | SPG Oak Grove Land, LLC membership interests | 50% |
| 114(y) | SPG Pinnacle, LLC membership interests | 50% |
| 114(z) | SPG Westport, LLC membership interests | 50% |
| 114(aa) | SPG Westport Two, LLC membership interests | 50% |

34

| Paragraph No. | Property Transferred or Name of Entity Transferred (if applicable) | % Interest Transferred |
|---|---|---|
| 114(bb) | Sugarloaf/Five Forks Partners, LLC membership interests | 25% |

132.   Each of these transfers was described by Wayne in his and/or Mason Capital's financial statements.[3]  For each of these transfers from Wayne to Mason Capital, Plaintiff cannot discern the exact transfer date from the documents in its possession.  However, based on the records available to Plaintiff, all of these transfers occurred between August 14, 2007 and February 1, 2008.  Therefore, at the earliest, each transfer occurred on August 14, 2007 for purposes of determining the applicable statute of limitations period.

**Wayne Transfers His Interests In The Beltline Project to Mason Capital**

133.   In addition to the Mason Capital Real Estate Transfers, Wayne also transferred his substantial interests in proceeds of the Beltline Project to Mason Capital for no consideration.

---

[3]     Plaintiff has described these entities and properties transferred by Wayne to Mason Capital based on personal financial statements submitted by Wayne to his lenders.  Upon obtaining additional information as to the exact names and addresses (as well as the specific dates of transfers) of the properties transferred by Wayne to Mason Capital, Plaintiff will supplement or amend its Complaint.

134.   On or about December 6, 2004, Wayne formed a series of limited liability companies under the laws of the State of Georgia, including (collectively, the "Beltline Entities"): Ansley North Beltline, LLC; Ansley South Beltline, LLC; Piedmont Beltline, LLC; North Avenue Beltline, LLC; Corridor Beltline, LLC and Corridor Edgewood, LLC.  On information and belief, Wayne originally held one hundred percent (100%) of the membership interests in each of Beltline Entities.

135.   Wayne formed the Beltline Entities with the intention of acquiring numerous tracts of land as part of an intended development of a twenty-two (22) mile loop around Atlanta's core (the "Beltline Project").  In or about December 2004, Wayne, through the Beltline Entities, purchased numerous tracts of land (collectively, the "Beltline Properties") for approximately $25,000,000 as part of the Beltline Project.

136.   To induce lenders to issue loans to him and/or Beltline Entities, Wayne disclosed to his lenders (and his business partners) that the ownership interests in the Beltline Entities (and thus the Beltline Properties) were his personal assets, and represented that such assets would be available to support his loan obligations.

36

137.   In or about 2004, Wayne transferred to KWM Investments, a Georgia limited liability company and an entity owned, on information and belief, by Keith, a twenty five percent (25%) ownership interest in each of the Beltline Entities.

138.   On or about January 26, 2005, Wayne formed the Northeast Atlanta Beltline Group, LLC ("NABG") as the operating entity for the Beltline Project. On information and belief, Keith held the title of manager for NABG. Furthermore, on information and belief, Wayne retained one hundred percent (100%) of the membership interests in NABG.  Alternatively, on information and belief, Wayne transferred a twenty-five percent (25%) membership interest in NABG to KWM Investments and the remaining seventy-five percent (75%) membership interest in NABG to Mason Capital.

139.   On information and belief, and notwithstanding the allocation of membership interests in NABG or Keith's title as manager, Wayne directed the operations of NABG through the same office as his related entities and with assistance from Wayne's and/or his related entities' employees, such as Lori Schoenfuss.

140.   On information and belief, NABG served as yet another entity through which Wayne transferred at least some funds from his own personal account or accounts in an effort to place assets beyond the reach of Wayne's

37

creditors and enrich Wayne's family members.  For example, on or about October

15, 2008, Jamie and Kristy each received $480,000 from an NABG account at

Georgian Bank (account number ending 4183) that had periodically been funded

by one of Wayne's accounts at Georgian Bank (account number ending 2276).  On

information and belief, Jamie and Kristy had no business, professional, or other

role with the Beltline Project or the acquisition of the Beltline Properties by Wayne

and the Beltline Entities.

141.   In 2006, Hakim Hilliard, Wayne's zoning attorney, estimated that

Beltline Properties were worth as much as $140,000,000.

142.   Following the formation of Mason Capital in or about August 2007,

and prior to February 1, 2008, Wayne transferred to Mason Capital his remaining

75% ownership interest in each Beltline Entity (collectively with the Mason

Capital Real Estate Transfers, the "Mason Capital Transfers").

143.   In or about October 2007, Wayne and Keith sold the Beltline

Properties to an entity jointly owned by, among others, the City of Atlanta.

144.   In consideration of its purchase of the Beltline Properties, the

purchaser provided to the Beltline Entities, and thus, to Wayne (or Mason Capital,

as fraudulent transferee) as a seventy-five percent (75%) owner and to Keith as a

twenty-five percent (25%) owner (and likely fraudulent transferee), an initial

38

payment of $21,000,000 and a promissory note in the amount of $45,000,000 (the "Beltline Note").  On information and belief, the terms of the Beltline Note provided for a one-year maturity date and an annual interest rate of twelve percent (12%).

145.   Between October 2007 and the maturity date of the Beltline Note in approximately October 2008, Wayne, Keith, and/or Beltline Entities received interest payments on the note.  The interest payments over that one-year period totaled approximately $5,400,000.

146.   Mason Capital, as a fraudulent transferee of Wayne's 75% ownership interest in the Beltline Entities or an alter ego of Wayne, received as much as $4,050,000.

147.   On October 31, 2008, upon the maturity of the Beltline Note, such purchaser paid to Wayne, Keith, and/or Beltline Entities a final payment of $45,000,000.  Mason Capital, as a fraudulent transferee of Wayne's 75% ownership interest in the Beltline Entities or an alter ego of Wayne, received approximately $33,750,000.

148.   All told, on account of Wayne's transfers to Mason Capital, for which transfers Wayne received no value (let alone reasonably equivalent value), Mason

Capital received at over $45,000,000 of funds—funds that could and should have been used to repay Wayne's substantial creditors.

149.   Following its acquisition of the Judgment in April 2015, Plaintiff discovered these specific transfers involving Mason Capital in the course of its investigation of Wayne's assets.  On information and belief, neither Wayne nor any of Defendants disclosed these transfers to any predecessors of Plaintiff or any of their agents or representatives.

## Mason Capital, At Wayne's Direction, Transfers Cash and Securities To Certain Defendants

150.   In 2008 and 2009, and notwithstanding his substantial debts to the lenders referenced above, Wayne directed Mason Capital to transfer at least $7.5 million in cash and securities from accounts held at BB&T (account number ending 4232 and 4275), BrandBank (account number ending 0612 and 4600), and Georgian Bank (account number ending 5509) to certain Defendants.[4]  Such transfers include (collectively, the "Alter Ego Transfers"):

| Paragraph No. | Transfer To | Date | Cash Transferred |
|---|---|---|---|
| 133(a) | Lone Pine | 11/20/2008 | $300,000 |
| 133(b) | Lone Pine | 12/5/2008 | $2,491,897 |

[4]    Investigation continues as to additional transfers made directly by Mason Capital.

40

| Paragraph No. | Transfer To | Date | Cash Transferred |
|---|---|---|---|
| 133(c) | Lone Pine | 10/13/2009 | $1,000,000 |
| 133(d) | MFC LLC | 10/16/2009 | $1,500,000 |
| 133(e) | David and Kimberly (joint account) | 4/15/2009 | $580,000 |
| 133(f) | Jamie | 4/15/2009 | $586,250 |
| 133(g) | Keith | 4/15/2009 | $580,000 |
| 133(h) | Kristy | 4/15/2009 | $586,250 |
| 133(i) | Moore LLC | 5/8/2009 | $250,000 |
| 133(j) | MF Management | 5/21/2009 | $25,000 |
| 133(k) | Jamie | 6/4/2009 | $6,250 |
| 133(*l*) | Kristy | 6/4/2009 | $6,250 |
| 133(m) | MF Management | 7/30/2009 | $30,000 |
| 133(n) | MF Management | 8/18/2009 | $90,000 |
| 133(o) | MF Management | 10/5/2009 | $1,000 |
| 133(p) | Moore LLC | 1/11/2010 | $10,000 |
| 133(q) | MF Management | 1/27/2010 | $20,000 |
| 133(r) | Lone Pine | 2/1/2010 | $25,000 |
| 133(s) | MF Management | 2/8/2010 | $18,000 |
| 133(t) | Lone Pine | 2/8/2010 | $32,000 |
| 133(u) | Four K | 2/8/2010 | $200,000 |
| 133(v) | Moore LLC | 2/16/2010 | $30,000 |
| 133(w) | MF Management | 2/26/2010 | $15,000 |
| 133(x) | MF Management | 3/22/2010 | $15,000 |
| 133(y) | Lone Pine | 3/25/2010 | $40,000 |
| 133(z) | Four K | 3/25/2010 | $248,000 |
| 133(aa) | Lone Pine | 3/30/2010 | $100,000 |
| 133(bb) | MF Management | 4/8/2010 | $25,000 |
| 133(cc) | Lone Pine | 4/20/2010 | $35,000 |
| 133(dd) | MF Management | 4/21/2010 | $10,000 |
| 133(ee) | Lone Pine | 5/26/2010 | $20,000 |
| 133(ff) | Lone Pine | 6/28/2010 | $5,000 |
| 133(gg) | Moore LLC | 6/28/2010 | $12,000 |
| 133(hh) | Lone Pine | 7/1/2010 | $2,000 |
| 133(ii) | Moore LLC | 7/1/2010 | $15,000 |
| 133(jj) | MF Management | 7/7/2010 | $2,000 |

41

| Paragraph No. | Transfer To | Date | Cash Transferred |
|---|---|---|---|
| 133(kk) | Moore LLC | 7/7/2010 | $5,000 |
| 133(*ll*) | Moore LLC | 7/9/2010 | $3,000 |
| 133(mm) | Lone Pine | 7/9/2010 | $12,000 |
| 133(nn) | MF Management | 7/16/2010 | $20,000 |
| 133(oo) | Lone Pine | 7/16/2010 | $35,000 |
| 133(pp) | MF Management | 8/19/2010 | $10,000 |
| 133(qq) | MF Management | 10/8/2010 | $20,000 |
| 133(rr) | MFC LLC | 11/19/2010 | $220,000 |
| 133(ss) | MFC LLC | 12/1/2010 | $25,000 |
| 133(tt) | Moore LLC | 12/14/2010 | $20,000 |
| 133(uu) | Four K | 12/14/2010 | $30,000 |
| 133(vv) | MF Management | 12/14/2010 | $40,000 |
| 133(ww) | MFC LLC | 12/14/2010 | $100,000 |
| 133(xx) | MF Management | 1/3/2011 | $15,000 |
| 133(yy) | MFC LLC | 5/3/2011 | $100,000 |
| 133(zz) | Four K | 5/27/2011 | $32,000 |
| 133(aaa) | MFC LLC | 6/24/2011 | $200,000 |
| 133(bbb) | ADCA LLC | 9/12/2011 | $30,000 |
| 133(ccc) | Annette | 11/4/2011 | $10,000 |
| 133(ddd) | Annette | 11/21/2011 | $12,000 |
| 133(eee) | Moore LLC | 11/21/2011 | $60,000 |
| 133(fff) | Annette | 11/29/2011 | $10,000 |
| 133(ggg) | Annette | 12/9/2011 | $10,000 |
| 133(hhh) | MFC LLC | 12/9/2011 | $210,000 |
| 133(iii) | Annette | 12/16/2011 | $10,000 |
| 133(jjj) | Annette | 12/27/2011 | $20,000 |
| 133(kkk) | Annette | 1/6/2012 | $10,000 |
| 133(*lll*) | ADCA LLC | 2/7/2012 | $25,000 |
| 133(mmm) | Four K | 2/7/2012 | $2,000 |
| 133(nnn) | Annette | 2/7/2012 | $5,000 |
| 133(ooo) | MFC LLC | 2/27/2012 | $10,000 |
| 133(ppp) | Annette | 3/6/2012 | $20,000 |
| 133(qqq) | Annette | 3/27/2012 | $10,000 |
| 133(rrr) | Moore LLC | 4/9/2012 | $5,000 |

| Paragraph No. | Transfer To | Date | Cash Transferred |
|---|---|---|---|
| 133(sss) | MF Management | 4/17/2012 | $5,000 |
| 133(ttt) | MFC LLC | 4/20/2012 | $5,500 |
| 133(uuu) | MFC LLC | 5/11/2012 | $75,000 |
| 133(vvv) | Annette | 6/5/2012 | $25,000 |
| 133(www) | Annette | 7/5/2012 | $20,000 |
| 133(xxx) | MFC LLC | 7/5/2012 | $40,000 |
| 133(yyy) | Annette | 8/3/2012 | $10,000 |
| 133(zzz) | Annette | 8/22/2012 | $5,000 |
| 133(aaaa) | MFC LLC | 8/23/2012 | $10,000 |
| 133(bbbb) | MFC LLC | 8/31/2012 | $48,000 |
| 133(cccc) | MFC LLC | 5/20/2013 | $73,900 |
| 133(dddd) | **Total** | | **$10,575,297** |

151.    Based on the foregoing, Mason Capital, as the alter ego of Wayne, made each and every one of the transfers between November 20, 2008 and April 15, 2009.  Mason Capital, as the alter ego of Wayne, transferred cash from accounts held in Mason Capital's name into accounts held in certain Defendants' names as identified above.

152.    Beginning in 2011 and through as recent as July 21, 2015, upon information and belief, MFC LLC transferred funds it had received through fraudulent transfers from Mason Capital and/or Wayne to ADCA LLC, a subsequent and/or final transferee.  Those transfers, including from an account held at BrandBank (account number ending 4002), are referred to herein as part of the Alter Ego Transfers and include the following:

43

| Paragraph No. | Transfer To | Date | Cash Transferred |
|---|---|---|---|
| 135(a) | ADCA LLC | 8/23/2011 | $35,000 |
| 135(b) | ADCA LLC | 9/19/2011 | $90,000 |
| 135(c) | ADCA LLC | 10/7/2011 | $80,000 |
| 135(d) | ADCA LLC | 10/25/2011 | $10,000 |
| 135(e) | ADCA LLC | 11/4/2011 | $55,000 |
| 135(f) | ADCA LLC | 11/18/2011 | $12,000 |
| 135(g) | ADCA LLC | 11/18/2011 | $12,000 |
| 135(h) | ADCA LLC | 12/2/2011 | $10,000 |
| 135(i) | ADCA LLC | 12/16/2011 | $70,000 |
| 135(j) | ADCA LLC | 2/21/2012 | $5,000 |
| 135(k) | ADCA LLC | 3/23/2012 | $30,000 |
| 135(*l*) | ADCA LLC | 4/20/2012 | $45,000 |
| 135(m) | ADCA LLC | 5/25/2012 | $12,000 |
| 135(n) | ADCA LLC | 6/22/2012 | $3,000 |
| 135(o) | ADCA LLC | 7/5/2012 | $2,000 |
| 135(p) | ADCA LLC | 7/18/2012 | $35,000 |
| 135(q) | ADCA LLC | 8/23/2012 | $20,000 |
| 135(r) | ADCA LLC | 8/31/2012 | $150,000 |
| 135(s) | ADCA LLC | 11/6/2012 | $5,000 |
| 135(t) | ADCA LLC | 11/9/2012 | $120,000 |
| 135(u) | ADCA LLC | 11/16/2012 | $25,000 |
| 135(v) | ADCA LLC | 11/28/2012 | $20,000 |
| 135(w) | ADCA LLC | 12/6/2012 | $15,000 |
| 135(x) | ADCA LLC | 12/10/2012 | $75,000 |
| 135(y) | ADCA LLC | 12/19/2012 | $20,000 |
| 135(z) | ADCA LLC | 12/21/2012 | $25,000 |
| 135(aa) | ADCA LLC | 12/28/2012 | $50,000 |
| 135(bb) | ADCA LLC | 1/4/2013 | $40,000 |
| 135(cc) | ADCA LLC | 2/4/2013 | $15,000 |
| 135(dd) | ADCA LLC | 2/22/2013 | $30,000 |
| 135(ee) | ADCA LLC | 3/6/2013 | $15,000 |
| 135(ff) | ADCA LLC | 3/7/2013 | $15,000 |
| 135(gg) | ADCA LLC | 3/22/2013 | $10,000 |
| 135(hh) | ADCA LLC | 3/29/2013 | $120,000 |

| Paragraph No. | Transfer To | Date | Cash Transferred |
|---|---|---|---|
| 135(ii) | ADCA LLC | 4/19/2013 | $10,000 |
| 135(jj) | ADCA LLC | 4/19/2013 | $20,000 |
| 135(kk) | ADCA LLC | 4/30/2013 | $10,000 |
| 135(*ll*) | ADCA LLC | 5/6/2013 | $85,000 |
| 135(mm) | ADCA LLC | 5/10/2013 | $5,000 |
| 135(nn) | ADCA LLC | 5/17/2013 | $5,000 |
| 135(oo) | ADCA LLC | 5/24/2013 | $15,000 |
| 135(pp) | ADCA LLC | 5/31/2013 | $10,000 |
| 135(qq) | ADCA LLC | 6/11/2013 | $15,000 |
| 135(rr) | ADCA LLC | 6/21/2013 | $125,000 |
| 135(ss) | ADCA LLC | 7/12/2013 | $5,000 |
| 135(tt) | ADCA LLC | 7/19/2013 | $15,000 |
| 135(uu) | ADCA LLC | 8/2/2013 | $15,000 |
| 135(vv) | ADCA LLC | 9/12/2013 | $25,000 |
| 135(ww) | ADCA LLC | 9/13/2013 | $5,000 |
| 135(xx) | ADCA LLC | 9/20/2013 | $40,000 |
| 135(yy) | ADCA LLC | 9/27/2013 | $25,000 |
| 135(zz) | ADCA LLC | 1/7/2014 | $5,000 |
| 135(aaa) | ADCA LLC | 1/21/2014 | $5,000 |
| 135(bbb) | ADCA LLC | 1/24/2014 | $5,000 |
| 135(ccc) | ADCA LLC | 1/29/2014 | $20,000 |
| 135(ddd) | ADCA LLC | 2/5/2014 | $20,000 |
| 135(eee) | ADCA LLC | 2/18/2014 | $15,000 |
| 135(fff) | ADCA LLC | 2/26/2014 | $10,000 |
| 135(ggg) | ADCA LLC | 2/27/2014 | $10,000 |
| 135(hhh) | ADCA LLC | 3/11/2014 | $50,000 |
| 135(iii) | ADCA LLC | 3/28/2014 | $15,000 |
| 135(jjj) | ADCA LLC | 3/31/2014 | $10,000 |
| 135(kkk) | ADCA LLC | 4/4/2014 | $10,000 |
| 135(*lll*) | ADCA LLC | 4/18/2014 | $40,000 |
| 135(mmm) | ADCA LLC | 4/25/2014 | $10,000 |
| 135(nnn) | ADCA LLC | 5/5/2014 | $10,000 |
| 135(ooo) | ADCA LLC | 5/19/2014 | $10,000 |
| 135(ppp) | ADCA LLC | 5/27/2014 | $75,000 |

22132142v.1

| Paragraph No. | Transfer To | Date | Cash Transferred |
|---|---|---|---|
| 135(qqq) | ADCA LLC | 6/11/2014 | $10,000 |
| 135(rrr) | ADCA LLC | 6/25/2014 | $20,000 |
| 135(sss) | ADCA LLC | 7/1/2014 | $5,000 |
| 135(ttt) | ADCA LLC | 7/18/2014 | $70,000 |
| 135(uuu) | ADCA LLC | 7/25/2014 | $5,000 |
| 135(vvv) | ADCA LLC | 7/25/2014 | $10,000 |
| 135(www) | ADCA LLC | 8/8/2014 | $10,000 |
| 135(xxx) | ADCA LLC | 8/15/2014 | $10,000 |
| 135(yyy) | ADCA LLC | 8/20/2014 | $20,000 |
| 135(zzz) | ADCA LLC | 9/4/2014 | $20,000 |
| 135(aaaa) | ADCA LLC | 9/18/2014 | $30,000 |
| 135(bbbb) | ADCA LLC | 9/29/2014 | $10,000 |
| 135(cccc) | ADCA LLC | 9/30/2014 | $75,000 |
| 135(dddd) | ADCA LLC | 10/3/2014 | $15,000 |
| 135(eeee) | ADCA LLC | 10/14/2014 | $15,000 |
| 135(ffff) | ADCA LLC | 10/16/2014 | $20,000 |
| 135(gggg) | ADCA LLC | 10/24/2014 | $10,000 |
| 135(hhhh) | ADCA LLC | 10/30/2014 | $55,000 |
| 135(iiii) | ADCA LLC | 11/7/2014 | $25,000 |
| 135(jjjj) | ADCA LLC | 11/12/2014 | $20,000 |
| 135(kkkk) | ADCA LLC | 11/21/2014 | $30,000 |
| 135(*llll*) | ADCA LLC | 12/4/2014 | $265,000 |
| 135(mmmm) | ADCA LLC | 12/10/2014 | $70,000 |
| 135(nnnn) | ADCA LLC | 12/16/2014 | $10,000 |
| 135(oooo) | ADCA LLC | 12/18/2014 | $15,000 |
| 135(pppp) | ADCA LLC | 1/7/2015 | $20,000 |
| 135(qqqq) | ADCA LLC | 1/12/2015 | $10,000 |
| 135(rrrr) | ADCA LLC | 1/17/2015 | $10,000 |
| 135(ssss) | ADCA LLC | 1/27/2015 | $30,000 |
| 135(tttt) | ADCA LLC | 2/5/2015 | $10,000 |
| 135(uuuu) | ADCA LLC | 2/17/2015 | $20,000 |
| 135(vvvv) | ADCA LLC | 2/17/2015 | $220,000 |
| 135(wwww) | ADCA LLC | 2/24/2015 | $10,000 |
| 135(xxxx) | ADCA LLC | 3/4/2015 | $40,000 |

| Paragraph No. | Transfer To | Date | Cash Transferred |
|---|---|---|---|
| 135(yyyy) | ADCA LLC | 3/13/2015 | $10,000 |
| 135(zzzz) | ADCA LLC | 3/20/2015 | $15,000 |
| 135(aaaaa) | ADCA LLC | 3/31/2015 | $15,000 |
| 135(bbbbb) | ADCA LLC | 4/3/2015 | $25,000 |
| 135(ccccc) | ADCA LLC | 4/20/2015 | $15,000 |
| 135(ddddd) | ADCA LLC | 4/24/2015 | $10,000 |
| 135(eeeee) | ADCA LLC | 4/29/2015 | $10,000 |
| 135(fffff) | ADCA LLC | 5/8/2015 | $10,000 |
| 135(ggggg) | ADCA LLC | 5/15/2015 | $10,000 |
| 135(hhhhh) | ADCA LLC | 5/21/2015 | $10,000 |
| 135(iiiii) | ADCA LLC | 6/1/2015 | $55,000 |
| 135(jjjjj) | ADCA LLC | 6/17/2015 | $20,000 |
| 135(kkkkk) | ADCA LLC | 7/2/2015 | $3,000 |
| 135(lllll) | ADCA LLC | 7/2/2015 | $7,000 |
| 135(mmmmm) | ADCA LLC | 7/10/2015 | $25,000 |
| 135(nnnnn) | ADCA LLC | 7/21/2015 | $15,000 |
| 135(ooooo) | **Total** | | **$3,496,000** |

153.   Additionally, on information and belief, Mascap LLC is a subsequent and/or final transferee of funds from Mason Capital, and such subsequent transfers to Mascap LLC are also referred to herein as part of the Alter Ego Transfers.

154.   Following its acquisition of the Judgment in April 2015, Plaintiff discovered these transfers in the course of its investigation of Wayne's assets.  On information and belief, neither Wayne nor any of Defendants disclosed these transfers to any predecessors of Plaintiff or any of their agents or representatives.

47

155.   Indeed, with respect to cash held by Mason Capital, Wayne, on information and belief,  informed certain lenders (including Georgian Bank, the predecessor to Plaintiff) that cash held by Mason Capital - including cash resulting from the sale of the Beltline Properties - would be available to retire his obligations under his numerous guaranties.

**Wayne And His Alter Ego, Mason Capital, Utilize Funds To Invest In Detention LLC and Rose Hill Owned By Moore Road**

156.   During the same time as he was making substantial transfers of his assets to Mason Capital (his alter ego), his family members, and other entities in his control, Wayne, on information and belief, was funding the construction of Rose Hill.

157.   As of the date hereof, Moore LLC owns Rose Hill, a 35,100-square-foot residential mansion with eight (8) bedrooms and seventeen (17) bathrooms. Rose Hill is located on 14.5 acres in Suwanee, Georgia.  According to media reports, the Rose Hill cost approximately $40 million to build and included five kitchens, custom-milled woodwork, heart of pine floors, and Jerusalem limestone façade cladding.  As of September 16, 2015, Rose Hill was listed for sale at $10.9 million.

48

158.   On or about August 26, 2005, Lone Pine acquired the property on which Rose Hill sits for $223,000.  Thereafter, on September 1, 2008, Lone Pine transferred title to Rose Hill to Mason Capital for the purported sum of $1.00. Finally, on October 16, 2009, Mason Capital transferred title to Rose Hill to Moore LLC, for the purported sum of $9.0 million ("Rose Hill Title Transfer").  On information and belief, Moore LLC paid no actual funds to Mason Capital in exchange for Mason Capital's transfer of title to Rose Hill.

159.   On information and belief and based on documentation provided to Plaintiff, Wayne and his alter ego, Mason Capital, transferred at least $28 million to various parties to fund the construction of Rose Hill (these transfers, along with the Rose Hill Title Transfer, the "Rose Hill Transfers").  Moreover, on information and belief, Wayne and his alter ego, Mason Capital, utilized a substantial portion of the funds resulting from the Beltline Transaction to fund the construction of Rose Hill.

160.   Despite expending such funds, neither Wayne, nor his alter ego, Mason Capital, hold any ownership or other interest in Rose Hill, and Mason Capital, at the direction of Wayne, transferred ownership of Rose Hill to Moore LLC to keep it out of the reach of Wayne's creditors.  Moreover, on information

and belief, neither Wayne nor Annette ever lived in or utilized Rose Hill for any purpose or at any time.

161.   In addition to his substantial expenditures for Rose Hill, Wayne also invested in other non-real estate investments in 2009 and 2010.  Wayne made such investments despite reporting negative net worth to his lenders during the relevant period.  On information and belief, and based on documentation provided to Plaintiff, Wayne and/or his alter ego, Mason Capital, transferred at least $5.7 million to with respect to a loan to or an investment in Detention LLC ("Detention Transfers").  However, on information and belief, neither Wayne nor his alter ego, Mason Capital, ever held any ownership interest in Detention LLC.

162.   Following its acquisition of the Judgment in April 2015, Plaintiff discovered these transfers in the course of its investigation of Wayne's assets.  On information and belief, neither Wayne nor any of Defendants disclosed these transfers to any predecessors of Plaintiff or any of their agents or representatives.

**Wayne Admits His Fraudulent Scheme to His Partners**

163.   Wayne "bragged" about these Transfers when speaking with Ronald S. Leventhal ("Leventhal"), a real estate developer and former business partner of Wayne.

50

164.   Wayne, Leventhal, John Williams and James Wallace (collectively, the "Liberty Members"), were the co-members/owners of Liberty Capital, LLC ("Liberty"), and co-guarantors with respect to the underlying Liberty loan obligations that resulted in the Judgment acquired by Edgefield.

165.   Wayne initially represented to lenders (including Plaintiff's predecessors-in-interest), as well as the other Liberty Members, that he held substantial assets to support his various loan obligations, including the loan obligations owed to Plaintiff's predecessors-in-interest, and that such personal assets were and would continue to be available to support such loan obligations. Specifically, Wayne represented that he held substantial personal assets that could support his loan obligations to various creditors, including the Real Estate Assets (which included Beltline Entities and/or the Beltline Properties).

166.   In discussions with Leventhal in 2006, Wayne admitted to transferring ownership or other interests in Beltline Entities and/or the Beltline Properties for "imagery purposes."  In other words, Wayne admitted that he transferred interests in Beltline Entities and/or the Beltline Properties to Keith to protect the proceeds of such assets from the reach of Wayne's creditors.

167.   In discussions with Leventhal in 2007, Wayne admitted that: (a) he was protecting his assets; (b) he used a law firm in Gwinnett County, Georgia –

51

believed to be R. Bradley Carr of Anderson Carr & Tate – to form many of Wayne's real estate holding limited liability companies; (c) he used the McKenna Long & Aldridge law firm (now Dentons) – at which Keith is a partner – to set up various trusts; and (d) he was transferring real estate and other assets to these entities and trusts to keep them from out of the reach of his creditors.

168.   Wayne did not inform any of his lenders, including Plaintiff's predecessors-in-interest, of his asset protection plans and activities.

169.   Therefore, and despite his loan obligations, beginning in 2007, Wayne began transferring substantial personal assets, including the Cash, the Securities, and the Real Estate Assets, to his family and affiliated entities and trusts in an intentional effort to shield his personal assets from his various lenders (including Plaintiff's predecessors-in-interest).

170.   By 2010, Wayne admitted to Leventhal and the other Liberty Members that, despite his prior disclosure of substantial personal assets, he had insufficient funds to make contributions on behalf of or for the benefit of Liberty's operations and loan obligations.  Wayne admitted that most of his assets, including Beltline Entities and/or the Beltline Properties (and/or the proceeds therefrom), the Cash, and the Securities, were transferred to various family members, and

52

therefore, he would need to ask those family members for access to such assets to make contributions to Liberty for Liberty's operations and loan obligations.

171.   Further, Wayne admitted to Leventhal and the other Liberty Members that he would cease (and in fact did cease) making any payments or contributions on behalf of Liberty's obligations (which he guaranteed) after August 2011.  By that time, Wayne stated that he believed that the statute of limitations would have expired on any potential fraudulent transfer claims seeking to void his various Transfers to his family members and affiliated trusts and entities.

**Lori Schoenfuss' Involvement in Wayne's Fraudulent Transfers**

172.   At all relevant times, Lori has been a close friend and business associate of Wayne, his family and his related entities, some of which are Defendants in this case.

173.   At all relevant times, Lori was on the payroll of Wayne and/or entities that he owned or controlled, some of which are Defendants in this case.

174.   Upon information and belief, Lori was aware of, and facilitated, Wayne's shielding of assets through various transfers to entities in which Wayne had a controlling or ownership interest, or, to persons who were close friends or family members.

175.   In fact, one of Lori's responsibilities as an associate of Wayne's was to disguise Wayne's fraudulent transfers in order to make the transfers appear  to "*look like* a true third party transaction,"  (emphasis added) when, in fact, the transfers were to Wayne's family members and entities owned or controlled by Wayne for the sole purpose of having a Judgment against Wayne take a priority over his creditors, thus, defrauding Wayne's creditors.

**Tucker, SMSA and TLD Shield Wayne's Assets**

176.   Tucker and Wayne have known each other for approximately fifty years, during which time they and the companies that they owned and controlled have engaged in numerous business deals and transactions.

177.   Tucker and Wayne have been close friends and business partners for decades.  By way of example, Tucker and Wayne owned a liquor store together in Suwanee, Georgia for a number of years.  As mentioned on the liquor store's website, "Beverage SuperStore is truly a family enterprise. The stores are owned and operated by the Wayne Mason family and the Richard Tucker family."[5]  In 2005, Wayne and Tucker sold their interests in the Beverage SuperStore, and new

---

[5]      *See* http://beveragesuperstore.com/site/about-us/all-about-us/.

ownership continues to operate a liquor sales business out of their location in Suwanee, Georgia.[6]

178.   In or about October 2013, Wayne and Tucker conspired to have Tucker acquire a judgment previously obtained by Synovus Bank against Wayne.

179.   On September 25, 2012, Synovus Bank had obtained a $5 million judgment against Wayne in a certain Civil Action Number 12-1-8870-34 in the Superior Court of Cobb County, Georgia in the case styled *Synovus Bank v. Highway 53 Forsyth Partners  LLC and Wayne Mason* (the "Synovus Judgment").

180.   Synovus filed and recorded FiFa writs as to the Synovus Judgment with the Superior Court of Cobb County, Georgia on or about September 3, 2013.

181.   On or about October 24, 2013, just days before Tucker purchased the Judgment, Tucker emailed Wayne's surrogate, Chris Hayes, informing him that "[y]ou need to call me tomorrow before y'all go to far down the road on arranging the details.  I have inside info that I will share with you."

182.   Shortly thereafter, Tucker, through counsel, formed SMSA on or about October 28, 2013.  Tucker was SMSA's managing member.

---

[6] *See* http://www.megapackagestore.com/about.

22132142v.1

183.    Only three days after SMSA was formed, on October 31, 2013, Synovus Bank agreed to sell the Synovus Judgment against Mason to Tucker and SMSA for only $500,000, a remarkable 90% discount.

184.    Tucker and SMSA purchased this Synovus Judgment in furtherance of Wayne's scheme to defraud his creditors, holding them at bay.

185.    TLD - an entity owned and controlled by Frank Hanna - loaned SMSA $500,000 for the purpose of purchasing the Synovus Judgment.  On information and belief, Wayne, through one of his entities, provided TLD and Frank Hanna sufficient funds to loan Tucker the money needed to acquire the Synovus Judgment.

186.    SMSA assigned the judgement and FiFas related to the Synovus Judgment to TLD as collateral for said loan.

187.    Frank signed as President of Hanna Investments, on behalf of TLD.

188.    Tucker was well aware of Wayne's scheme to defraud his creditors and actively, but secretly, participated in the purchase of the Synovus Judgment on behalf of SMSA.

189.    On information and belief, Wayne wanted Tucker to acquire the judgment so that none of Wayne's creditors would know that he orchestrated the acquisition of the judgment and to allow him to syphon otherwise valuable assets

56

to Tucker (and place them beyond the reach of Wayne's creditors).After Tucker and SMSA purchased the Synovus Judgment, Tucker retained a law firm, Mahaffey Pickens Tucker, LLP (the "Mahaffey Firm") purportedly to "enforce" the judgment against Wayne.  Tucker retained the Mahaffey Firm even though it had represented Wayne, his family members and/or numerous entities related to Wayne for many years.  Moreover, upon information and belief, Tucker is father of one of the name partners in the Mahaffey Firm.

190.   Wayne "settled" the so-called enforcement action by transferring valuable assets to Tucker and SMSA (the "SMSA Transfers").  Wayne transferred these assets even though he had provided the funding - through TLD -  - through TLD -  to allow SMSA to acquire the Synovus Judgment.

191.   Wayne transferred the following assets to SMSA:

- On or about November 11, 2014, Wayne transferred all of his ownership interests, investments, and contributions into Nancy Creek Captial QP, LP, a Delaware limited partnership (the "NC Fund"), which are believed to be worth between $500,000 and $1,000,000 via a "Transfer and Assignment Agreement" between Wayne, SMSA and the NC Fund agreement between Wayne, SMSA and the NC Fund; and

- On or about July 7, 2015, Wayne transferred his entire $500,000 capital contribution in an entity known as Williams Realty Fund, LLC to SMSA.

57

192.   In addition to those transfers, Mason Capital (Wayne's alter ego) transferred significant sums of money to ADCA.  Tucker is the registered agent of ADCA, and ADCA's president is Wayne's son, Keith.

193.   Upon information and belief, MFC, LLC was funded by Mason Capital, which, in turn, transferred almost $3,500,000 to ADCA.   Furthermore, upon information and belief, ADCA also received $2,500,000 from the sale of Lawrenceville Suwannee, LLC, an entity in which Tucker is its managing member. On information and belief, Lawrenceville Suwannee was one of the partners or related entities that owned the Beverage SuperStore.

194.   Wayne's control of the transfer of the Synovus Judgment, which involved Tucker and SMSA, was done for the twin purposes of: (a) having this judgment take a priority over Wayne's valid creditors, thus, defrauding Wayne's creditors; and (b) allowing Wayne to further shield valuable assets by transferring them to a friendly party.

195.   Following its acquisition of the Judgment in April 2015, Plaintiff discovered these specific transfers in the course of its investigation of Wayne's assets.  On information and belief, neither Wayne nor any of Defendants disclosed these transfers to any predecessors of Plaintiff or any of their agents or representatives.

**Frank Hanna and DRI Shield Wayne's Assets**

196.   On or about September 10, 2010, Wells Fargo obtained a judgment against Wayne and Lone Pine in the amount of $8,269,949.55 in the action entitled *Wachovia Bank, National Association vs. Lone Pine, Inc. and Wayne H. Mason*, Case no. 1:09-cv-02983-JOF in the U.S. District Court for the Northern District of Georgia (the "Wells Fargo Judgment").  The Wells Fargo Judgment remains unpaid.

197.   In or about October 2013, Wayne and Frank Hanna conspired to have Frank Hanna acquire the Wells Fargo Judgment.

198.   Wells Fargo also executed the following assignments to DRI: Assignment of Deed to Secure Debt, Security Agreement and Absolute Assignment of Leases;  Assignment of Mortgage;  and Assignment of Deeds to Secure Debt (Deed to Secure Debt , Security Agreement and Assignment of Rents and Leases by Lone Pine in favor of Wells Fargo and Deed to Secure Debt, Security Agreement and Assignment of Rents and Leases by Lawrenceville-Suwanee Associates in favor of Wells Fargo).

199.   DRI was formed for the sole purpose of purchasing the Wells Fargo Judgment and the related loan documents.

200.   On information and belief, Frank Hanna formed DRI, at the request or direction of Wayne, in order to carry out such purpose.

201.   Frank Hanna was the sole member and manager of DRI.

202.   Frank Hanna was the president and sole general partner of Hanna Investments, GP, Inc., a Georgia corporation, that conducted business with entities owned or controlled by Wayne, such as Braselton Ventures, LLC, a Georgia limited liability company for which Wayne was the managing member.

203.   On information and belief, Wayne or some of the other Defendants provided DRI and/or Hanna with the funds to establish DRI and to purchase the Judgment against Wayne.

204.   Lori admitted that they wanted to use Frank Hanna's lawyer so "this [transaction to purchase the Wells Fargo Judgment] *looks like* a true third party transaction."  (emphasis added)

205.   Upon information and belief, Wayne directed Frank Hanna to use a new or different attorney for DRI in the Wells Fargo transaction, with all closing documents to be sent to that attorney, so that there could be no "link" to Wayne or a company related to Wayne as part of such transaction.

206.    Frank Hanna engaged Georgia attorney Bobby Lee Cook to act as his attorney in connection with DRI's purchase of the Wells Fargo Judgment.

60

207.   On or about October 29, 2013, Frank Hanna and DRI agreed to purchase the Wells Fargo Judgment against Wayne.

208.   Wells Fargo assigned the judgment directly to DRI.

209.   Upon information and belief, a FiFa was filed for the Wells Fargo Judgement in the Superior Court of Cobb County, Georgia.  That FiFa remains pending against, and an encumbrance on, the assets of Wayne.

210.   Following its acquisition of the Judgment in April 2015, Plaintiff discovered these specific transfers in the course of its investigation of Wayne's assets.  On information and belief, neither Wayne nor any of Defendants disclosed these transfers to any predecessors of Plaintiff or any of their agents or representatives.

## COUNT I:  Declaratory Judgment - Alter Ego
### (Wayne and Mason Capital)

211.   Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1-16, 33-34, 83-96, and 116-209 of this Complaint as if fully set forth herein.

212.   Wayne has abused the corporate form and improperly utilized Mason Capital as a corporate subterfuge to evade creditors and perpetuate a fraudulent scheme.

61

213.   Wayne has utilized Mason Capital as a mere instrumentality for the transaction of his own affairs.

214.   Wayne has maintained complete and unfettered control over Mason Capital and its financial affairs, and Mason Capital has operated pursuant to the will and unfettered direction of Wayne.

215.   Wayne and Mason Capital have operated as a de facto enterprise, working as if they were one business with common ownership, common management, and common personnel and with rapid movements of funds from one entity to the other.

216.   Based on the foregoing, Mason Capital has been utilized by Wayne as his alter ego, and accordingly, Mason Capital's corporate form and any purported separate existence should be disregarded.

### Count II: Statutory Fraudulent Transfer - Actual Intent
**(Mason Personal Cash Transfers to Annette, Jamie, Kimberly, Kristy, K.W. Mason (as trustee for MF Trust), MF Trust, Mascap LLC, ADCA LLC, and Shelly)**

217.   Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1-16, 83-103, and 162-209 of this Complaint as if fully set forth herein.

218.   Plaintiff, as the successor in interest to FDIC and First Citizens, is entitled to seek collection of the Judgment and assert fraudulent transfer claims in the course of recovering such judgment pursuant to, *inter alia*, the UFTA.

219.   Wayne made each and every one of the Mason Personal Cash Transfers between April 24, 2007 and August 5, 2009.

220.   Plaintiff did not discover these Mason Personal Cash Transfers until after it acquired the Judgment in April 2015 and conducted post-judgment discovery on third parties.

221.   Neither Plaintiff nor its predecessors-in-interest with respect to the Judgment had any reasonable basis to discover the Mason Personal Cash Transfers prior to Plaintiff's review of post-judgment discovery.

222.   Therefore, pursuant to O.C.G.A. § 18-2-79(1), Plaintiff's claim, as the owner of the Judgment, against Annette, Jamie, Kimberly, Kristy, K.W. Mason (as trustee for MF Trust), MF Trust, Mascap LLC, ADCA LLC, and Shelly under Count II is timely asserted.

223.   As of September 25, 2009, a fraudulent transfer claim under O.C.G.A. § 18-2-74(a)(1) also was timely if the transfers occurred within the prior four year period starting from September 25, 2005.

224.   Wayne made each and every one of the Mason Personal Cash Transfers between April 24, 2007 and August 5, 2009, which was after September 25, 2005.

225.   As described above, Plaintiff, as the successor to FDIC, is entitled to apply the extended limitations period provided for in 12 U.S.C. § 1821(d)(14), which requires Plaintiff to pursue its claim before September 25, 2015.

226.   As described above and pursuant to 12 U.S.C. § 1821(d)(14), Plaintiff's claim, as the owner of the Judgment, against Annette, Jamie, Kimberly, Kristy, K.W. Mason (as trustee for MF Trust), MF Trust, Mascap LLC, ADCA LLC, and Shelly under Count II is timely.

227.   Wayne made the Mason Personal Cash Transfers after he had incurred his guaranty obligations to various lenders on hundreds of millions of dollars in loans.

228.   Each and every one of the Mason Personal Cash Transfers was made with the actual intent to hinder, delay, or defraud Wayne's present and future creditors.

229.   Accordingly, the Mason Personal Cash Transfers are voidable under the UFTA, and of no effect as to Plaintiff.

64

230.   Each of Annette, Jamie, Kimberly, Kristy, K.W. Mason (as trustee for MF Trust), MF Trust, Mascap LLC, ADCA LLC, and Shelly holds the assets that are the subject of the Mason Personal Cash Transfers in a constructive trust for the benefit of Plaintiff.

231.   Plaintiff is entitled to an Order nullifying and voiding the Mason Personal Cash Transfers and declaring that title to and ownership of the assets that are the subject of the Mason Personal Cash Transfers remain with Wayne and/or is entitled to be included in a judgment against Annette, Jamie, Kimberly, Kristy, K.W. Mason (as trustee for MF Trust), MF Trust, Mascap LLC, ADCA LLC, and Shelly for the value of the assets that are the subject of the Mason Personal Cash Transfers or the amount necessary to satisfy Plaintiff's Judgment against Wayne, whichever is less.

232.   Plaintiff is further entitled to an Order from the Court that Plaintiff may levy execution on the assets that are the subject of the Mason Personal Cash Transfers or on their proceeds.

233.   Furthermore, as a result of the actions of Annette, Jamie, Kimberly, Kristy, K.W. Mason (as trustee for MF Trust), MF Trust, Mascap LLC, ADCA LLC, and Shelly in participating in the Mason Personal Cash Transfers, Plaintiff has suffered general damages and is entitled to recover from Annette, Jamie,

65

Kimberly, Kristy, K.W. Mason (as trustee for MF Trust), MF Trust, Mascap LLC,

ADCA LLC, and Shelly in an amount to be shown at trial.

## COUNT III:  Statutory Fraudulent Transfer - Insufficient Remaining Assets
### (Mason Personal Cash Transfers to Annette, Jamie, Kimberly, Kristy, K.W. Mason (as trustee for MF Trust), MF Trust, Mascap LLC, ADCA LLC, and Shelly)

234.   Plaintiff repeats and realleges each and every allegation contained in

Paragraphs 1-16, 83-103, and 162-209 of this Complaint as if fully set forth herein.

235.   Plaintiff, as the successor in interest to FDIC and First Citizens, is

entitled to seek collection of the Judgment and assert fraudulent transfer claims in

the course of recovering such judgment pursuant to, *inter alia*, the UFTA.

236.   As of September 25, 2009, a fraudulent transfer claim under O.C.G.A.

§ 18-2-74(a)(2) was timely if the transfers occurred within the prior four year

period starting from September 25, 2005.

237.   Wayne made each and every one of the Mason Personal Cash

Transfers between April 24, 2007 and August 5, 2009, which was after September

25, 2005.

238.   As described above, Plaintiff, as the successor to FDIC, is entitled to

apply the extended limitations period provided for in 12 U.S.C. § 1821(d)(14),

which requires Plaintiff to pursue its claim before September 25, 2015.

239.   As described above and pursuant to 12 U.S.C. § 1821(d)(14), Plaintiff's claim, as the owner of the Judgment, against Annette, Jamie, Kimberly, Kristy, K.W. Mason (as trustee for MF Trust), MF Trust, Mascap LLC, ADCA LLC, and Shelly under Count III is timely.

240.   Wayne made the Mason Personal Cash Transfers after he had incurred his guaranty obligations to various lenders on hundreds of millions of dollars in loans.

241.   The Mason Personal Cash Transfers were made without Wayne receiving a reasonably equivalent value in exchange for the Mason Personal Cash Transfers.

242.   At the time the Mason Personal Cash Transfers were made, Wayne was engaged or was about to engage in a business or transaction for which his remaining assets were unreasonably small in relation to the business or the transaction.

243.   At the time the Mason Personal Cash Transfers were made, Wayne intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay them as they became due.

244.   Accordingly, the Mason Personal Cash Transfers are voidable under the UFTA, and of no effect as to Plaintiff.

245.   Each of Annette, Jamie, Kimberly, Kristy, K.W. Mason (as trustee for MF Trust), MF Trust, Mascap LLC, ADCA LLC, and Shelly holds the assets that are the subject of the Mason Personal Cash Transfers in a constructive trust for the benefit of Plaintiff.

246.   Plaintiff is entitled to an Order nullifying and voiding the Mason Personal Cash Transfers and declaring that title to and ownership of the assets that are the subject of the Mason Personal Cash Transfers remain with Wayne and/or is entitled to a judgment against Annette, Jamie, Kimberly, Kristy, K.W. Mason (as trustee for MF Trust), MF Trust, Mascap LLC, ADCA LLC, and Shelly for the value of the assets that are the subject of the Mason Personal Cash Transfers or the amount necessary to satisfy Plaintiff's Judgment against Wayne, whichever is less.

247.   Plaintiff is further entitled to an Order from the Court that Plaintiff may levy execution on the assets that are the subject of the Mason Personal Cash Transfers or on their proceeds.

248.   Furthermore, as a result of the actions of Annette, Jamie, Kimberly, Kristy, K.W. Mason (as trustee for MF Trust), MF Trust, Mascap LLC, ADCA LLC, and Shelly in participating in the Mason Personal Cash Transfers, Plaintiff has suffered general damages and is entitled to recover from Annette, Jamie,

Kimberly, Kristy, K.W. Mason (as trustee for MF Trust), MF Trust, Mascap LLC,

ADCA LLC, and Shelly in an amount to be shown at trial.

### COUNT IV:  Statutory Fraudulent Transfer - Insolvency
**(Mason Personal Cash Transfers to Annette, Jamie, Kimberly, Kristy, K.W.
Mason (as trustee for MF Trust), MF Trust, Mascap LLC, ADCA LLC, and
Shelly)**

249.    Plaintiff repeats and realleges each and every allegation contained in

Paragraphs 1-16, 83-103, and 162-209 of this Complaint as if fully set forth herein.

250.    Plaintiff, as the successor in interest to FDIC and First Citizens, is

entitled to seek collection of the Judgment and assert fraudulent transfer claims in

the course of recovering such judgment pursuant to, *inter alia*, the UFTA.

251.    As of September 25, 2009, a fraudulent transfer claim under O.C.G.A.

§ 18-2-75(a) was timely if the transfers occurred within the prior four-year period

starting from September 25, 2005.

252.    Wayne made each and every one of the Mason Personal Cash

Transfers between April 24, 2007 and August 5, 2009, which was after September

25, 2005.

253.    As described above, Plaintiff, as the successor to FDIC, is entitled to

apply the extended limitations period provided for in 12 U.S.C. § 1821(d)(14),

which requires Plaintiff to pursue its claim before September 25, 2015.

254.   As described above and pursuant to 12 U.S.C. § 1821(d)(14), Plaintiff's claim, as the owner of the Judgment, against Annette, Jamie, Kimberly, Kristy, K.W. Mason (as trustee for MF Trust), MF Trust, Mascap LLC, ADCA LLC, and Shelly under Count IV is timely.

255.   Wayne made the Mason Personal Cash Transfers after he had incurred his guaranty obligations to various lenders on hundreds of millions of dollars in loans.

256.   Wayne made the Mason Personal Cash Transfers without receiving a reasonably equivalent value in exchange.

257.   Wayne was insolvent at the time of the Mason Personal Cash Transfers or became insolvent as a result of the Mason Personal Cash Transfers.

258.   Accordingly, the Mason Personal Cash Transfers are voidable under the UFTA, and of no effect as to Plaintiff.

259.   Each of Annette, Jamie, Kimberly, Kristy, K.W. Mason (as trustee for MF Trust), MF Trust, Mascap LLC, ADCA LLC, and Shelly holds the assets that are the subject of the Mason Personal Cash Transfers in a constructive trust for the benefit of Plaintiff.

260.   Plaintiff is entitled to an Order nullifying and voiding the Mason Personal Cash Transfers and declaring that title to and ownership of the assets that

are the subject of the transfers remain with Wayne and/or is entitled to a judgment against Annette, Jamie, Kimberly, Kristy, K.W. Mason (as trustee for MF Trust), MF Trust, Mascap LLC, ADCA LLC, and Shelly for the value of the assets that are the subject of the Mason Personal Cash Transfers or the amount necessary to satisfy Plaintiff's Judgment against Wayne, whichever is less.

261.   Plaintiff is further entitled to an Order from the Court that Plaintiff may levy execution on the assets that are the subject of the Mason Personal Cash Transfers or on their proceeds.

262.   Furthermore, as a result of the actions of Annette, Jamie, Kimberly, Kristy, K.W. Mason (as trustee for MF Trust), MF Trust, Mascap LLC, ADCA LLC, and Shelly in participating in the Mason Personal Cash Transfers, Plaintiff has suffered general damages and is entitled to recover from Annette, Jamie, Kimberly, Kristy, K.W. Mason (as trustee for MF Trust), MF Trust, Mascap LLC, ADCA LLC, and Shelly in an amount to be shown at trial.

**COUNT V:  Statutory Fraudulent Transfer - Made to Insider**
**(Mason Personal Cash Transfers to Annette, Jamie, Kimberly, Kristy, K.W.**
**Mason (as trustee for MF Trust), MF Trust, Mascap LLC, ADCA LLC, and**
**Shelly)**

263.   Plaintiff repeats and realleges each and every allegation contained in

Paragraphs 1-16, 21-29, 36-38, 44, 57-65, 83-103, and 162-209 of this Complaint

as if fully set forth herein.

264.   Plaintiff, as the successor in interest to FDIC and First Citizens, is

entitled to seek collection of the Judgment and assert fraudulent transfer claims in

the course of recovering such judgment pursuant to, *inter alia*, the UFTA.

265.   As of September 25, 2009, a fraudulent transfer claim under O.C.G.A.

§ 18-2-75(b) was timely if the transfers occurred within the prior four year period

starting from September 25, 2005.

266.   Wayne made each and every one of the Mason Personal Cash

Transfers between April 24, 2007 and August 5, 2009, which was after September

25, 2005.

267.   As described above, Plaintiff, as the successor to FDIC, is entitled to

apply the extended limitations period provided for in 12 U.S.C. § 1821(d)(14),

which requires Plaintiff to pursue its claim before September 25, 2015.

268.   As described above and pursuant to 12 U.S.C. § 1821(d)(14), Plaintiff's claim, as the owner of the Judgment, against Annette, Jamie, Kimberly, Kristy, K.W. Mason (as trustee for MF Trust), MF Trust, Mascap LLC, ADCA LLC, and Shelly under Count V is timely.

269.   Wayne made the Mason Personal Cash Transfers after he had incurred his guaranty obligations to various lenders on hundreds of millions of dollars in loans.

270.   Wayne made the Mason Personal Cash Transfers without receiving a reasonably equivalent value in exchange.

271.   Wayne was insolvent at the time of the Mason Personal Cash Transfers or became insolvent as a result of the Mason Personal Cash Transfers.

272.   Each of Annette, Jamie, Kimberly, Kristy, K.W. Mason (as trustee for MF Trust), MF Trust, Mascap LLC, ADCA LLC, and Shelly was and are "insiders" with respect to Wayne.

273.   Annette, Jamie, Kimberly, Kristy, K.W. Mason (as trustee for MF Trust), MF Trust, Mascap LLC, ADCA LLC, and Shelly had reasonable cause to believe that Wayne was insolvent at the time of the Mason Personal Cash Transfers.

73

274.   Accordingly, the Mason Personal Cash Transfers are voidable under the UFTA, and of no effect as to Plaintiff.

275.   Each of Annette, Jamie, Kimberly, Kristy, K.W. Mason (as trustee for MF Trust), MF Trust, Mascap LLC, ADCA LLC, and Shelly hold the assets that are the subject of the Mason Personal Cash Transfers in a constructive trust for the benefit of Plaintiff.

276.   Plaintiff is entitled to an Order nullifying and voiding the Mason Personal Cash Transfers and declaring that title to and ownership of the assets that are the subject of the Mason Personal Cash Transfers remain with in Wayne and/or is entitled to a judgment against Annette, Jamie, Kimberly, Kristy, K.W. Mason (as trustee for MF Trust), MF Trust, Mascap LLC, ADCA LLC, and Shelly for the value of the assets that are the subject of the Mason Personal Cash Transfers or the amount necessary to satisfy Plaintiff's judgment against Wayne, whichever is less.

277.   Plaintiff is further entitled to an Order from the Court that Plaintiff may levy execution on the assets that are the subject of the Mason Personal Cash Transfers or on their proceeds.

278.   Furthermore, as a result of the actions of Annette, Jamie, Kimberly, Kristy, K.W. Mason (as trustee for MF Trust), MF Trust, Mascap LLC, ADCA LLC, and Shelly in participating in the Mason Personal Cash Transfers, Plaintiff

74

has suffered general damages and is entitled to recover from Annette, Jamie,

Kimberly, Kristy, K.W. Mason (as trustee for MF Trust), MF Trust, Mascap LLC,

ADCA LLC, and Shelly in an amount to be shown at trial.

## COUNT VI: Statutory Fraudulent Transfer - Actual Intent
### (Trust Transfers to K.W. Mason (as trustee for MF Trust) and MF Trust)

279.   Plaintiff repeats and realleges each and every allegation contained in

Paragraphs 1-16, 83-96, 104-109, and 162-209 of this Complaint as if fully set

forth herein.

280.   Plaintiff, as the successor in interest to FDIC and First Citizens, is

entitled to seek collection of the Judgment and assert fraudulent transfer claims in

the course of recovering such judgment pursuant to, *inter alia*, the UFTA.

281.   The Trust Transfers were made between August 10, 2007 and

December 31, 2007.

282.   Plaintiff did not discover these Trust Transfers until after it acquired

the Judgment in April 2015 and conducted post-judgment discovery on third

parties.

283.   Neither Plaintiff nor its predecessors-in-interest with respect to the

Judgment, had a reasonable basis to discover the Trust Transfers prior to Plaintiff's

review of post-judgment discovery.

75

284.   Therefore, pursuant to O.C.G.A. § 18-2-79(1), Plaintiff's claim, as the owner of the Judgment, against K.W. Mason (as trustee for MF Trust) and MF Trust under Count VI is timely asserted.

285.   As of September 25, 2009, a fraudulent transfer claim under O.C.G.A. § 18-2-74(a)(1) also was timely if the transfers occurred within the prior four year period starting from September 25, 2005.

286.   Wayne made each and every one of the Trust Transfers between August 10, 2007 and December 31, 2007, which was after September 25, 2005.

287.   As described above, Plaintiff, as the successor to FDIC, is entitled to apply the extended limitations period provided for in 12 U.S.C. § 1821(d)(14), which requires Plaintiff to pursue its claim before September 25, 2015.

288.   As described above and pursuant to 12 U.S.C. § 1821(d)(14), Plaintiff's claim, as the owner of the Judgment, against K.W. Mason (as trustee for MF Trust) and MF Trust under Count VI is timely.

289.   Wayne made the Trust Transfers after he had incurred his guaranty obligations to various lenders on hundreds of millions of dollars in loans.

290.   Each and every one of the Trust Transfers was made with the actual intent to hinder, delay, or defraud Wayne's present and future creditors.

76

291.   Accordingly, the Trust Transfers are voidable under the UFTA, and of no effect as to Plaintiff.

292.   Each of K.W. Mason (as trustee for MF Trust) and MF Trust holds the assets that are the subject of the Trust Transfers in a constructive trust for the benefit of Plaintiff.

293.   Plaintiff is entitled to an Order nullifying and voiding the Trust Transfers and declaring that title to and ownership of the assets that are the subject of the Trust Transfers remain with Wayne and/or is entitled to a judgment against K.W. Mason (as trustee for MF Trust) and MF Trust for the value of the assets that are the subject of the Trust Transfers or the amount necessary to satisfy Plaintiff's Judgment against Wayne, whichever is less.

294.   Plaintiff is further entitled to an Order from the Court that Plaintiff may levy execution on the assets that are the subject of the Trust Transfers or on their proceeds.

295.   Furthermore, as a result of the actions of K.W. Mason (as trustee for MF Trust) and MF Trust in participating in the Trust Transfers, Plaintiff has suffered general damages and is entitled to recover from K.W. Mason (as trustee for MF Trust) and MF Trust in an amount to be shown at trial.

**<u>COUNT VII:  Statutory Fraudulent Transfer - Insufficient Remaining Assets</u>**
**(Trust Transfers to K.W. Mason (as trustee for MF Trust) and MF Trust)**

296.   Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1-16, 83-96, 104-109, and 162-209 of this Complaint as if fully set forth herein.

297.   Plaintiff, as the successor in interest to FDIC and First Citizens, is entitled to seek collection of the Judgment and assert fraudulent transfer claims in the course of recovering such judgment pursuant to, *inter alia*, the UFTA.

298.   The Trust Transfers were made between August 10, 2007 and December 31, 2007.

299.   As of September 25, 2009, a fraudulent transfer claim under O.C.G.A. § 18-2-74(a)(2) was timely if the transfers occurred within the prior four year period starting from September 25, 2005.

300.   Wayne made each and every one of the Trust Transfers between August 10, 2007 and December 31, 2007, which was after September 25, 2005.

301.   As described above, Plaintiff, as the successor to FDIC, is entitled to apply the extended limitations period provided for in 12 U.S.C. § 1821(d)(14), which requires Plaintiff to pursue its claim before September 25, 2015.

78

302.   As described above and pursuant to 12 U.S.C. § 1821(d)(14), Plaintiff's claim, as the owner of the Judgment, against K.W. Mason (as trustee for MF Trust) and MF Trust under Count VII is timely.

303.   Wayne made the Trust Transfers after he had incurred his guaranty obligations to various lenders on hundreds of millions of dollars in loans.

304.   The Trust Transfers were made without Wayne receiving a reasonably equivalent value in exchange for the Trust Transfers.

305.   At the time the Trust Transfers were made, Wayne was engaged or was about to engage in a business or transaction for which his remaining assets were unreasonably small in relation to the business or the transaction.

306.   At the time the Trust Transfers were made, Wayne intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay them as they became due.

307.   Accordingly, the Trust Transfers are voidable under the UFTA, and of no effect as to Plaintiff.

308.   Each of K.W. Mason (as trustee for MF Trust) and MF Trust holds the assets that are the subject of the Trust Transfers in a constructive trust for the benefit of Plaintiff.

309.   Plaintiff is entitled to an Order nullifying and voiding the Trust Transfers and declaring that title to and ownership of the assets that are the subject of the Trust Transfers remain with Wayne and/or is entitled to a judgment against K.W. Mason (as trustee for MF Trust) and MF Trust for the value of the assets that are the subject of the Trust Transfers or the amount necessary to satisfy Plaintiff's Judgment against Wayne, whichever is less.

310.   Plaintiff is further entitled to an Order from the Court that Plaintiff may levy execution on the assets that are the subject of the Trust Transfers or on their proceeds.

311.   Furthermore, as a result of the actions of K.W. Mason (as trustee for MF Trust) and MF Trust in participating in the Trust Transfers, Plaintiff has suffered general damages and is entitled to recover from K.W. Mason (as trustee for MF Trust) and MF Trust in an amount to be shown at trial.

## COUNT VIII:  Statutory Fraudulent Transfer - Insolvency
### (Trust Transfers to K.W. Mason (as trustee for MF Trust) and MF Trust)

312.   Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1-16, 83-96, 104-109, and 162-209 of this Complaint as if fully set forth herein.

313.   Plaintiff, as the successor in interest to FDIC and First Citizens, is entitled to seek collection of the Judgment and assert fraudulent transfer claims in the course of recovering such judgment pursuant to, *inter alia*, the UFTA.

314.   The Trust Transfers were made between August 10, 2007 and December 31, 2007.

315.   As of September 25, 2009, a fraudulent transfer claim under O.C.G.A. § 18-2-75(a) was timely if the transfers occurred within the prior four year period starting from September 25, 2005.

316.   Wayne made each and every one of the Trust Transfers between August 10, 2007 and December 31, 2007, which was after September 25, 2005.

317.   As described above, Plaintiff, as the successor to FDIC, is entitled to apply the extended limitations period provided for in 12 U.S.C. § 1821(d)(14), which requires Plaintiff to pursue its claim before September 25, 2015.

318.   As described above and pursuant to 12 U.S.C. § 1821(d)(14), Plaintiff's claim, as the owner of the Judgment, against K.W. Mason (as trustee for MF Trust) and MF Trust under Count VIII is timely.

319.   Wayne made the Trust Transfers after he had incurred his guaranty obligations to various lenders on hundreds of millions of dollars in loans.

320.   Wayne made the Trust Transfers after he had incurred his guaranty obligations to various lenders on hundreds of millions of dollars in loans.

321.   Wayne made the Trust Transfers without receiving a reasonably equivalent value in exchange.

322.   Wayne was insolvent at the time of the Trust Transfers or became insolvent as a result of the Trust Transfers.

323.   Accordingly, the Trust Transfers are voidable under the UFTA, and of no effect as to Plaintiff.

324.   Each of K.W. Mason (as trustee for MF Trust) and MF Trust holds the assets that are the subject of the Trust Transfers in a constructive trust for the benefit of Plaintiff.

325.   Plaintiff is entitled to an Order nullifying and voiding the Trust Transfers and declaring that title to and ownership of the assets that are the subject of the Trust Transfers remain with Wayne and/or is entitled to a judgment against K.W. Mason (as trustee for MF Trust) and MF Trust or the value of the assets that are the subject of the Trust Transfers or the amount necessary to satisfy Plaintiff's Judgment against Wayne, whichever is less.

82

326.   Plaintiff is further entitled to an Order from the Court that Plaintiff may levy execution on the assets that are the subject of the Trust Transfers or on their proceeds.

327.   Furthermore, as a result of the actions of K.W. Mason (as trustee for MF Trust) and MF Trust in participating in the Trust Transfers, Plaintiff has suffered general damages and is entitled to recover from K.W. Mason (as trustee for MF Trust) and MF Trust in an amount to be shown at trial.

### Count IX: Statutory Fraudulent Transfer - Actual Intent
### (Mason Capital Transfers to Mason Capital)

328.   Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1-16,83-96, 116-149, and 162-209 of this Complaint as if fully set forth herein.

329.   Plaintiff, as the successor in interest to FDIC and First Citizens, is entitled to seek collection of the Judgment and assert fraudulent transfer claims in the course of recovering such judgment pursuant to, *inter alia*, the UFTA.

330.   Each and every one of the Mason Capital Transfers was made no earlier than August 2007.

331.   Plaintiff did not discover these Mason Capital Transfers until after it acquired the Judgment in April 2015 and conducted post-judgment discovery on third parties.

332.   Neither Plaintiff nor its predecessors-in-interest with respect to the Judgment, had a reasonable basis to discover the Mason Capital Transfers prior to Plaintiff's review of post-judgment discovery.

333.   Therefore, pursuant to O.C.G.A. § 18-2-79(1), Plaintiff's claim, as the owner of the Judgment, against Mason Capital under Count IX is timely asserted.

334.   As of September 25, 2009, a fraudulent transfer claim under O.C.G.A. § 18-2-74(a)(1) also was timely if the transfers occurred within the prior four year period starting from September 25, 2005.

335.   Wayne made each and every one of the Mason Capital Transfers on or after August 2007, which was after September 25, 2005.

336.   As described above, Plaintiff, as the successor to FDIC, is entitled to apply the extended limitations period provided for in 12 U.S.C. § 1821(d)(14), which requires Plaintiff to pursue its claim before September 25, 2015.

337.   As described above and pursuant to 12 U.S.C. § 1821(d)(14), Plaintiff's claim, as the owner of the Judgment, against Mason Capital under Count IX is timely.

338.   Wayne made the Mason Capital Transfers after he had incurred his guaranty obligations to various lenders on hundreds of millions of dollars in loans.

339.   Each and every one of the Mason Capital Transfers was made with the actual intent to hinder, delay, or defraud Wayne's present and future creditors.

340.   Accordingly, the Mason Capital Transfers are voidable under the UFTA, and of no effect as to Plaintiff.

341.   Mason Capital holds the assets that are the subject of the Mason Capital Transfers in a constructive trust for the benefit of Plaintiff.

342.   Plaintiff is entitled to an Order nullifying and voiding the Mason Capital Transfers and declaring that title to and ownership of the assets that are the subject of the Mason Capital Transfers remain with Wayne and/or is entitled to a judgment against Mason Capital for the value of the assets that are the subject of the Mason Capital Transfers or the amount necessary to satisfy Plaintiff's Judgment against Wayne, whichever is less.

343.   Plaintiff is further entitled to an Order from the Court that Plaintiff may levy execution on the assets that are the subject of the Mason Capital Transfers or on their proceeds.

344.    Furthermore, as a result of Mason Capital's actions in participating in the Mason Capital Transfers, Plaintiff has suffered general damages and is entitled to recover from Mason Capital in an amount to be shown at trial.

## COUNT X:  Statutory Fraudulent Transfer - Insufficient Remaining Assets
### (Mason Capital Transfers to Mason Capital)

345.    Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1-16,83-96, 116-149, and 162-209 of this Complaint as if fully set forth herein.

346.    Plaintiff, as the successor in interest to FDIC and First Citizens, is entitled to seek collection of the Judgment and assert fraudulent transfer claims in the course of recovering such judgment pursuant to, *inter alia*, the UFTA.

347.    Each and every one of the Mason Capital Transfers was made no earlier than August 2007.

348.    As of September 25, 2009, a fraudulent transfer claim under O.C.G.A. § 18-2-74(a)(2) was timely if the transfers occurred within the prior four year period starting from September 25, 2005.

349.    Wayne made each and every one of the Mason Capital Transfers on or after August 2007, which was after September 25, 2005.

86

350.    As described above, Plaintiff, as the successor to FDIC, is entitled to apply the extended limitations period provided for in 12 U.S.C. § 1821(d)(14), which requires Plaintiff to pursue its claim before September 25, 2015.

351.    As described above and pursuant to 12 U.S.C. § 1821(d)(14), Plaintiff's claim, as the owner of the Judgment, against Mason Capital under Count X is timely.

352.    Wayne made the Mason Capital Transfers after he had incurred his guaranty obligations to various lenders on hundreds of millions of dollars in loans.

353.    The Mason Capital Transfers were made without Wayne receiving a reasonably equivalent value in exchange for the Mason Capital Transfers.

354.    At the time the Mason Capital Transfers were made, Wayne was engaged or was about to engage in a business or transaction for which his remaining assets were unreasonably small in relation to the business or the transaction.

355.    At the time the Mason Capital Transfers were made, Wayne intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay them as they became due.

356.    Accordingly, the Mason Capital Transfers are voidable under the UFTA, and of no effect as to Plaintiff.

87

357.   Mason Capital holds the assets that are the subject of the Mason Capital Transfers in a constructive trust for the benefit of Plaintiff.

358.   Plaintiff is entitled to an Order nullifying and voiding the Mason Capital Transfers and declaring that title to and ownership of the assets that are the subject of the Mason Capital Transfers remain with Wayne and/or is entitled to a judgment against Mason Capital for the value of the assets that are the subject of the Mason Capital Transfers or the amount necessary to satisfy Plaintiff's Judgment against Wayne, whichever is less.

359.   Plaintiff is further entitled to an Order from the Court that Plaintiff may levy execution on the assets that are the subject of the Mason Capital Transfers or on their proceeds.

360.   Furthermore, as a result of Mason Capital's actions in participating in the Mason Capital Transfers, Plaintiff has suffered general damages and is entitled to recover from Mason Capital in an amount to be shown at trial.

### COUNT XI:  Statutory Fraudulent Transfer - Insolvency
### (Mason Capital Transfers to Mason Capital)

361.   Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1-16,83-96, 116-149, and 162-209 of this Complaint as if fully set forth herein.

362.   Plaintiff, as the successor in interest to FDIC and First Citizens, is entitled to seek collection of the Judgment and assert fraudulent transfer claims in the course of recovering such judgment pursuant to, *inter alia*, the UFTA.

363.   Each and every one of the Mason Capital Transfers was made no earlier than August 2007.

364.   As of September 25, 2009, a fraudulent transfer claim under O.C.G.A. § 18-2-75(a) was timely if the transfers occurred within the prior four year period starting from September 25, 2005.

365.   Wayne made each and every one of the Mason Capital Transfers on or after August 2007, which was after September 25, 2005.

366.   As described above, Plaintiff, as the successor to FDIC, is entitled to apply the extended limitations period provided for in 12 U.S.C. § 1821(d)(14), which requires Plaintiff to pursue its claim before September 25, 2015.

367.   As described above and pursuant to 12 U.S.C. § 1821(d)(14), Plaintiff's claim, as the owner of the Judgment, against Mason Capital under Count XI is timely.

368.   Wayne made the Mason Capital Transfers after he had incurred his guaranty obligations to various lenders on hundreds of millions of dollars in loans.

89

369.   Wayne made the Mason Capital Transfers without receiving a reasonably equivalent value in exchange.

370.   Wayne was insolvent at the time of the Mason Capital Transfers or became insolvent as a result of the Mason Capital Transfers.

371.   Accordingly, the Mason Capital Transfers are voidable under the UFTA, and of no effect as to Plaintiff.

372.   Mason Capital hold the assets that are the subject of the Mason Capital Transfers in a constructive trust for the benefit of Plaintiff.

373.   Plaintiff is entitled to an Order nullifying and voiding the Mason Capital Transfers and declaring that title to and ownership of the assets that are the subject of the Mason Capital Transfers remain with Wayne and/or is entitled to a judgment against Mason Capital for the value of the assets that are the subject of the Mason Capital Transfers or the amount necessary to satisfy Plaintiff's Judgment against Wayne, whichever is less.

374.   Plaintiff is further entitled to an Order from the Court that Plaintiff may levy execution on the assets that are the subject of the Mason Capital Transfers or on their proceeds.

90

375.    Furthermore, as a result of Mason Capital's actions in participating in the Mason Capital Transfers, Plaintiff has suffered general damages and is entitled to recover from Mason Capital in an amount to be shown at trial.

**Count XII: Statutory Fraudulent Transfer - Actual Intent**
**(Lone Pine Real Estate Transfers to Lone Pine)**

376.    Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1-16, 83-96, 110-115, and 162-209 of this Complaint as if fully set forth herein.

377.    Plaintiff, as the successor in interest to FDIC and First Citizens, is entitled to seek collection of the Judgment and assert fraudulent transfer claims in the course of recovering such judgment pursuant to, *inter alia*, the UFTA.

378.    Each and every one of the Lone Pine Real Estate Transfers was made on or about February 28, 2007.

379.    Plaintiff did not discover these Lone Pine Real Estate Transfers until after it acquired the Judgment in April 2015 and conducted post-judgment discovery on third parties.

380.    Neither Plaintiff nor its predecessors-in-interest with respect to the Judgment, had a reasonable basis to discover the Lone Pine Real Estate Transfers prior to Plaintiff's review of post-judgment discovery.

91

381.   Therefore, pursuant to O.C.G.A. § 18-2-79(1), Plaintiff's claim, as the owner of the Judgment, against Lone Pine under Count XII is timely asserted.

382.   As of September 25, 2009, a fraudulent transfer claim under O.C.G.A. § 18-2-74(a)(1) also was timely if the transfers occurred within the prior four year period starting from September 25, 2005.

383.   Wayne made each and every one of the Lone Pine Real Estate Transfers on or about February 28, 2007, which was after September 25, 2005.

384.   As described above, Plaintiff, as the successor to FDIC, is entitled to apply the extended limitations period provided for in 12 U.S.C. § 1821(d)(14), which requires Plaintiff to pursue its claim before September 25, 2015.

385.   As described above and pursuant to 12 U.S.C. § 1821(d)(14), Plaintiff's claim, as the owner of the Judgment, against Lone Pine under Count XII is timely.

386.   Wayne made the Lone Pine Real Estate Transfers after he had incurred his guaranty obligations to various lenders on hundreds of millions of dollars in loans.

387.   Each and every one of the Lone Pine Real Estate Transfers was made with the actual intent to hinder, delay, or defraud Wayne's present and future creditors.

388.   Accordingly, the Lone Pine Real Estate Transfers are voidable under the UFTA, and of no effect as to Plaintiff.

389.   Lone Pine holds the assets that are the subject of the Lone Pine Real Estate Transfers in a constructive trust for the benefit of Plaintiff.

390.   Plaintiff is entitled to an Order nullifying and voiding the Lone Pine Real Estate Transfers and declaring that title to and ownership of the assets that are the subject of the Lone Pine Real Estate Transfers remain with Wayne and/or is entitled to a judgment against Lone Pine for the value of the assets that are the subject of the Lone Pine Real Estate Transfers or the amount necessary to satisfy Plaintiff's Judgment against Wayne, whichever is less.

391.   Plaintiff is further entitled to an Order from the Court that Plaintiff may levy execution on the assets that are the subject of the Lone Pine Real Estate Transfers or on their proceeds.

392.   Furthermore, as a result of Lone Pine's actions in participating in the Lone Pine Real Estate Transfers, Plaintiff has suffered general damages and is entitled to recover from Lone Pine in an amount to be shown at trial.

93

## COUNT XIII:  Statutory Fraudulent Transfer - Insufficient Remaining Assets
### (Lone Pine Real Estate Transfers to Lone Pine)

393.   Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1-16, 83-96, 110-115, and 162-209 of this Complaint as if fully set forth herein.

394.   Plaintiff, as the successor in interest to FDIC and First Citizens, is entitled to seek collection of the Judgment and assert fraudulent transfer claims in the course of recovering such judgment pursuant to, *inter alia*, the UFTA.

395.   As of September 25, 2009, a fraudulent transfer claim under O.C.G.A. § 18-2-74(a)(2) was timely if the transfers occurred within the prior four year period starting from September 25, 2005.

396.   Wayne made each and every one of the Lone Pine Real Estate Transfers on or about February 28, 2007, which was after September 25, 2005.

397.   As described above, Plaintiff, as the successor to FDIC, is entitled to apply the extended limitations period provided for in 12 U.S.C. § 1821(d)(14), which requires Plaintiff to pursue its claim before September 25, 2015.

398.   As described above and pursuant to 12 U.S.C. § 1821(d)(14), Plaintiff's claim, as the owner of the Judgment, against Lone Pine under Count XIII is timely.

94

399.    Wayne made the Lone Pine Real Estate Transfers after he had incurred his guaranty obligations to various lenders on hundreds of millions of dollars in loans.

400.    The Lone Pine Real Estate Transfers were made without Wayne receiving a reasonably equivalent value in exchange for the Lone Pine Real Estate Transfers.

401.    At the time the Lone Pine Real Estate Transfers were made, Wayne was engaged or was about to engage in a business or transaction for which his remaining assets were unreasonably small in relation to the business or the transaction.

402.    At the time the Lone Pine Real Estate Transfers were made, Wayne intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay them as they became due.

403.    Accordingly, the Lone Pine Real Estate Transfers are voidable under the UFTA, and of no effect as to Plaintiff.

404.    Lone Pine holds the assets that are the subject of the Lone Pine Real Estate Transfers in a constructive trust for the benefit of Plaintiff.

405.    Plaintiff is entitled to an Order nullifying and voiding the Lone Pine Real Estate Transfers and declaring that title to and ownership of the assets that are

95

the subject of the Lone Pine Real Estate Transfers remain with Wayne and/or is entitled to a judgment against Lone Pine for the value of the assets that are the subject of the Lone Pine Real Estate Transfers or the amount necessary to satisfy Plaintiff's Judgment against Wayne, whichever is less.

406.   Plaintiff is further entitled to an Order from the Court that Plaintiff may levy execution on the assets that are the subject of the Lone Pine Real Estate Transfers or on their proceeds.

407.   Furthermore, as a result of Lone Pine's actions in participating in the Lone Pine Real Estate Transfers, Plaintiff has suffered general damages and is entitled to recover from Lone Pine in an amount to be shown at trial.

### COUNT XIV:  Statutory Fraudulent Transfer - Insolvency
### (Lone Pine Real Estate Transfers to Lone Pine)

408.   Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1-16, 83-96, 110-115, and 162-209 of this Complaint as if fully set forth herein.

409.   Plaintiff, as the successor in interest to FDIC and First Citizens, is entitled to seek collection of the Judgment and assert fraudulent transfer claims in the course of recovering such judgment pursuant to, *inter alia*, the UFTA.

96

410.   As of September 25, 2009, a fraudulent transfer claim under O.C.G.A. § 18-2-75(a) was timely if the transfers occurred within the prior four year period starting from September 25, 2005.

411.   Wayne made each and every one of the Lone Pine Real Estate Transfers on or about February 28, 2007, which was after September 25, 2005.

412.   As described above, Plaintiff, as the successor to FDIC, is entitled to apply the extended limitations period provided for in 12 U.S.C. § 1821(d)(14), which requires Plaintiff to pursue its claim before September 25, 2015.

413.   As described above and pursuant to 12 U.S.C. § 1821(d)(14), Plaintiff's claim, as the owner of the Judgment, against Lone Pine under Count XIV is timely.

414.   Wayne made the Lone Pine Real Estate Transfers after he had incurred his guaranty obligations to various lenders on hundreds of millions of dollars in loans.

415.   Wayne made the Lone Pine Real Estate Transfers without receiving a reasonably equivalent value in exchange.

416.   Wayne was insolvent at the time of the Lone Pine Real Estate Transfers or became insolvent as a result of the Lone Pine Real Estate Transfers.

97

417.    Accordingly, the Lone Pine Real Estate Transfers are voidable under the UFTA, and of no effect as to Plaintiff.

418.    Lone Pine hold the assets that are the subject of the Lone Pine Real Estate Transfers in a constructive trust for the benefit of Plaintiff.

419.    Plaintiff is entitled to an Order nullifying and voiding the Lone Pine Real Estate Transfers and declaring that title to and ownership of the assets that are the subject of the Lone Pine Real Estate Transfers remain with Wayne and/or is entitled to a judgment against Lone Pine for the value of the assets that are the subject of the Lone Pine Real Estate Transfers or the amount necessary to satisfy Plaintiff's Judgment against Wayne, whichever is less.

420.    Plaintiff is further entitled to an Order from the Court that Plaintiff may levy execution on the assets that are the subject of the Lone Pine Real Estate Transfers or on their proceeds.

421.    Furthermore, as a result of Lone Pine's actions in participating in the Lone Pine Real Estate Transfers, Plaintiff has suffered general damages and is entitled to recover from Lone Pine in an amount to be shown at trial.

**<u>Count XV: Statutory Fraudulent Transfer - Actual Intent</u>**
(Alter Ego Transfers to David,
Four K, Jamie, Keith, Kimberly, Kristy,
Lone Pine, Mascap LLC, ADCA LLC, MF Management, and MFC LLC)

422.   Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1-16, 83-96, and 99-154 of this Complaint as if fully set forth herein.

423.   Plaintiff, as the successor in interest to FDIC and First Citizens, is entitled to seek collection of the Judgment and assert fraudulent transfer claims in the course of recovering such judgment pursuant to, *inter alia*, the UFTA.

424.   Wayne, through his alter ego Mason Capital, made each and every one of the Alter Ego Transfers between November 2008 and May 2013.

425.   Plaintiff did not discover these Alter Ego Transfers until after it acquired the Judgment in April 2015 and conducted post-judgment discovery on third parties.

426.   Neither Plaintiff nor its predecessors-in-interest with respect to the Judgment had any reasonable basis to discover the Alter Ego Transfers prior to Plaintiff's review of post-judgment discovery.

427.   Therefore, pursuant to O.C.G.A. § 18-2-79(1), Plaintiff's claim, as the owner of the Judgment, against David, Four K, Jamie, Keith, Kimberly, Kristy,

Lone Pine, Mascap LLC, ADCA LLC, MF Management, and MFC LLC under Count XV is timely asserted.

428.   As of September 25, 2009, a fraudulent transfer claim under O.C.G.A. § 18-2-74(a)(1) also was timely if the transfers occurred within the prior four year period starting from September 25, 2005.

429.   Wayne, through his alter ego Mason Capital, made each and every one of the Alter Ego Transfers between November 2008 and May 2013, which was after September 25, 2005.

430.   As described above, Plaintiff, as the successor to FDIC, is entitled to apply the extended limitations period provided for in 12 U.S.C. § 1821(d)(14), which requires Plaintiff to pursue its claim before September 25, 2015.

431.   As described above and pursuant to 12 U.S.C. § 1821(d)(14), Plaintiff's claim, as the owner of the Judgment, against David, Four K, Jamie, Keith, Kimberly, Kristy, Lone Pine, Mascap LLC, ADCA LLC, MF Management, and MFC LLC under Count XV is timely.

432.   Wayne, through his alter ego Mason Capital, made the Alter Ego Transfers after he had incurred his guaranty obligations to various lenders on hundreds of millions of dollars in loans.

433.   Each and every one of the Alter Ego Transfers was made with the actual intent to hinder, delay, or defraud Wayne's present and future creditors.

434.   Accordingly, the Alter Ego Transfers are voidable under the UFTA, and of no effect as to Plaintiff.

435.   Each of David, Four K, Jamie, Keith, Kimberly, Kristy, Lone Pine, Mascap LLC, ADCA LLC, MF Management, and MFC LLC holds the assets that are the subject of the Alter Ego Transfers in a constructive trust for the benefit of Plaintiff.

436.   Plaintiff is entitled to an Order nullifying and voiding the Alter Ego Transfers and declaring that title to and ownership of the assets that are the subject of the Alter Ego Transfers remain with Wayne and/or is entitled to a judgment against David, Four K, Jamie, Keith, Kimberly, Kristy, Lone Pine, Mascap LLC, ADCA LLC, MF Management, and MFC LLC for the value of the assets that are the subject of the Alter Ego Transfers or the amount necessary to satisfy Plaintiff's Judgment against Wayne, whichever is less.

437.   Plaintiff is further entitled to an Order from the Court that Plaintiff may levy execution on the assets that are the subject of the Alter Ego Transfers or on their proceeds.

101

438.   Furthermore, as a result of the actions of David, Four K, Jamie, Keith, Kimberly, Kristy, Lone Pine, Mascap LLC, ADCA LLC, MF Management, and MFC LLC in participating in the Alter Ego Transfers, Plaintiff has suffered general damages and is entitled to recover from David, Four K, Jamie, Keith, Kimberly, Kristy, Lone Pine, Mascap LLC, ADCA LLC, MF Management, and MFC LLC in an amount to be shown at trial.

### Count XVI: Statutory Fraudulent Transfer - Insufficient Remaining Assets (Alter Ego Transfers to David, Four K, Jamie, Keith, Kimberly, Kristy, Lone Pine, Mascap LLC, ADCA LLC, MF Management, and MFC LLC)

439.   Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1-16, 83-96, and 99-154 of this Complaint as if fully set forth herein.

440.   Plaintiff, as the successor in interest to FDIC and First Citizens, is entitled to seek collection of the Judgment and assert fraudulent transfer claims in the course of recovering such judgment pursuant to, *inter alia*, the UFTA.

441.   As of September 25, 2009, a fraudulent transfer claim under O.C.G.A. § 18-2-74(a)(2) was timely if the transfers occurred within the prior four year period starting from September 25, 2005.

442.   Wayne, through his alter ego Mason Capital, made each and every one of the Alter Ego Transfers between November 2008 and May 2013, which was after September 25, 2005.

443.   As described above, Plaintiff, as the successor to FDIC, is entitled to apply the extended limitations period provided for in 12 U.S.C. § 1821(d)(14), which requires Plaintiff to pursue its claim before September 25, 2015.

444.   As described above and pursuant to 12 U.S.C. § 1821(d)(14), Plaintiff's claim, as the owner of the Judgment, against David, Four K, Jamie, Keith, Kimberly, Kristy, Lone Pine, Mascap LLC, ADCA LLC, MF Management, and MFC LLC under Count XVI is timely.

445.   Wayne, through his alter ego Mason Capital, made the Alter Ego Transfers after he had incurred his guaranty obligations to various lenders on hundreds of millions of dollars in loans.

446.   The Alter Ego Transfers were made without Wayne receiving a reasonably equivalent value in exchange for the Alter Ego Transfers.

447.   At the time the Alter Ego Transfers were made, Wayne was engaged or was about to engage in a business or transaction for which his remaining assets were unreasonably small in relation to the business or the transaction.

448.   At the time the Alter Ego Transfers were made, Wayne intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay them as they became due.

103

449.   Accordingly, the Alter Ego Transfers are voidable under the UFTA, and of no effect as to Plaintiff.

450.   Each of David, Four K, Jamie, Keith, Kimberly, Kristy, Lone Pine, Mascap LLC, ADCA LLC, MF Management, and MFC LLC holds the assets that are the subject of the Alter Ego Transfers in a constructive trust for the benefit of Plaintiff.

451.   Plaintiff is entitled to an Order nullifying and voiding the Alter Ego Transfers and declaring that title to and ownership of the assets that are the subject of the Alter Ego Transfers remain with Wayne and/or is entitled to a judgment against David, Four K, Jamie, Keith, Kimberly, Kristy, Lone Pine, Mascap LLC, ADCA LLC, MF Management, and MFC LLC for the value of the assets that are the subject of the Alter Ego Transfers or the amount necessary to satisfy Plaintiff's Judgment against Wayne, whichever is less.

452.   Plaintiff is further entitled to an Order from the Court that Plaintiff may levy execution on the assets that are the subject of the Alter Ego Transfers or on their proceeds.

453.   Furthermore, as a result of the actions of David, Four K, Jamie, Keith, Kimberly, Kristy, Lone Pine, Mascap LLC, ADCA LLC, MF Management, and MFC LLC in participating in the Alter Ego Transfers, Plaintiff has suffered general

104

damages and is entitled to recover from David, Four K, Jamie, Keith, Kimberly, Kristy, Lone Pine, Mascap LLC, ADCA LLC, MF Management, and MFC LLC in an amount to be shown at trial.

## Count XVII: Statutory Fraudulent Transfer - Insolvency
### (Alter Ego Transfers to David, Four K, Jamie, Keith, Kimberly, Kristy, Lone Pine, Mascap LLC, ADCA LLC, MF Management, and MFC LLC)

454.   Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1-16, 83-96, and 99-154 of this Complaint as if fully set forth herein.

455.   Plaintiff, as the successor in interest to FDIC and First Citizens, is entitled to seek collection of the Judgment and assert fraudulent transfer claims in the course of recovering such judgment pursuant to, *inter alia*, the UFTA.

456.   As of September 25, 2009, a fraudulent transfer claim under O.C.G.A. § 18-2-75(a) was timely if the transfers occurred within the prior four year period starting from September 25, 2005.

457.   Wayne, through his alter ego Mason Capital, made each and every one of the Alter Ego Transfers between November 2008 and May 2013, which was after September 25, 2005.

458.   As described above, Plaintiff, as the successor to FDIC, is entitled to apply the extended limitations period provided for in 12 U.S.C. § 1821(d)(14), which requires Plaintiff to pursue its claim before September 25, 2015.

105

459.   As described above and pursuant to 12 U.S.C. § 1821(d)(14),

Plaintiff's claim, as the owner of the Judgment, against David, Four K, Jamie,

Keith, Kimberly, Kristy, Lone Pine, Mascap LLC, ADCA LLC, MF Management,

and MFC LLC under Count XVII is timely.

460.   Wayne, through his alter ego Mason Capital, made the Alter Ego

Transfers after he had incurred his guaranty obligations to various lenders on

hundreds of millions of dollars in loans.

461.   Wayne, through his alter ego Mason Capital, made the Alter Ego

Transfers without receiving a reasonably equivalent value in exchange.

462.   Wayne was insolvent at the time of the Alter Ego Transfers or became

insolvent as a result of the Alter Ego Transfers.

463.   Accordingly, the Alter Ego Transfers are voidable under the UFTA,

and of no effect as to Plaintiff.

464.   Each of David, Four K, Jamie, Keith, Kimberly, Kristy, Lone Pine,

Mascap LLC, ADCA LLC, MF Management, and MFC LLC holds the assets that

are the subject of the Alter Ego Transfers in a constructive trust for the benefit of

Plaintiff.

465.   Plaintiff is entitled to an Order nullifying and voiding the Alter Ego

Transfers and declaring that title to and ownership of the assets that are the subject

of the Alter Ego Transfers remain with Wayne and/or is entitled to a judgment against David, Four K, Jamie, Keith, Kimberly, Kristy, Lone Pine, Mascap LLC, ADCA LLC, MF Management, and MFC LLC for the value of the assets that are the subject of the Alter Ego Transfers or the amount necessary to satisfy Plaintiff's Judgment against Wayne, whichever is less.

466.   Plaintiff is further entitled to an Order from the Court that Plaintiff may levy execution on the assets that are the subject of the Alter Ego Transfers or on their proceeds.

467.   Furthermore, as a result of the actions of David, Four K, Jamie, Keith, Kimberly, Kristy, Lone Pine, Mascap LLC, ADCA LLC, MF Management, and MFC LLC in participating in the Alter Ego Transfers, Plaintiff has suffered general damages and is entitled to recover from David, Four K, Jamie, Keith, Kimberly, Kristy, Lone Pine, Mascap LLC, ADCA LLC, MF Management, and MFC LLC in an amount to be shown at trial.

### Count XVIII: Statutory Fraudulent Transfer - Made to Insider
**(Alter Ego Transfers to David, Four K, Jamie, Keith, Kimberly, Kristy, Lone Pine, Mascap LLC, ADCA LLC, MF Management, and MFC LLC)**

468.   Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1-16, 17-19, 23-25, 32-37, 42-55, 83-96, and 99-154 of this Complaint as if fully set forth herein.

107

22132142v.1

469.   Plaintiff, as the successor in interest to FDIC and First Citizens, is entitled to seek collection of the Judgment and assert fraudulent transfer claims in the course of recovering such judgment pursuant to, *inter alia*, the UFTA.

470.   As of September 25, 2009, a fraudulent transfer claim under O.C.G.A. § 18-2-75(b) was timely if the transfers occurred within the prior four year period starting from September 25, 2005.

471.   Wayne, through his alter ego Mason Capital, made each and every one of the Alter Ego Transfers between November 2008 and May 2013, which was after September 25, 2005.

472.   As described above, Plaintiff, as the successor to FDIC, is entitled to apply the extended limitations period provided for in 12 U.S.C. § 1821(d)(14), which requires Plaintiff to pursue its claim before September 25, 2015.

473.   As described above and pursuant to 12 U.S.C. § 1821(d)(14), Plaintiff's claim, as the owner of the Judgment, against David, Four K, Jamie, Keith, Kimberly, Kristy, Lone Pine, Mascap LLC, ADCA LLC, MF Management, and MFC LLC under Count XVIII is timely.

474.   Wayne, through his alter ego Mason Capital, made the Alter Ego Transfers after he had incurred his guaranty obligations to various lenders on hundreds of millions of dollars in loans.

108

475.   Wayne, through his alter ego Mason Capital, made the Alter Ego Transfers without receiving a reasonably equivalent value in exchange.

476.   Wayne was insolvent at the time of the Alter Ego Transfers or became insolvent as a result of the Alter Ego Transfers.

477.   Each of David, Four K, Jamie, Keith, Kimberly, Kristy, Lone Pine, Mascap LLC, ADCA LLC, MF Management, and MFC LLC was and are "insiders" with respect to Wayne.

478.   Each of David, Four K, Jamie, Keith, Kimberly, Kristy, Lone Pine, Mascap LLC, ADCA LLC, MF Management, and MFC LLC had reasonable cause to believe that Wayne was insolvent at the time of the Alter Ego Transfers.

479.   Accordingly, the Alter Ego Transfers are voidable under the UFTA, and of no effect as to Plaintiff.

480.   Each of David, Four K, Jamie, Keith, Kimberly, Kristy, Lone Pine, Mascap LLC, ADCA LLC, MF Management, and MFC LLC holds the assets that are the subject of the Alter Ego Transfers in a constructive trust for the benefit of Plaintiff.

481.   Plaintiff is entitled to an Order nullifying and voiding the Alter Ego Transfers and declaring that title to and ownership of the assets that are the subject of the Alter Ego Transfers remain with Wayne and/or is entitled to a judgment

109

against David, Four K, Jamie, Keith, Kimberly, Kristy, Lone Pine, Mascap LLC, ADCA LLC, MF Management, and MFC LLC for the value of the assets that are the subject of the Alter Ego Transfers or the amount necessary to satisfy Plaintiff's Judgment against Wayne, whichever is less.

482.   Plaintiff is further entitled to an Order from the Court that Plaintiff may levy execution on the assets that are the subject of the Alter Ego Transfers or on their proceeds.

483.   Furthermore, as a result of the actions of David, Four K, Jamie, Keith, Kimberly, Kristy, Lone Pine, Mascap LLC, ADCA LLC, MF Management, and MFC LLC in participating in the Alter Ego Transfers, Plaintiff has suffered general damages and is entitled to recover from David, Four K, Jamie, Keith, Kimberly, Kristy, Lone Pine, Mascap LLC, ADCA LLC, MF Management, and MFC LLC in an amount to be shown at trial.

## Count XIX: Statutory Fraudulent Transfer - Actual Intent
### (Rose Hill Transfers to Moore LLC)

484.   Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1-16, 83-96, 116-127, and 156-209 of this Complaint as if fully set forth herein.

110

485.   Plaintiff, as the successor in interest to FDIC and First Citizens, is entitled to seek collection of the Judgment and assert fraudulent transfer claims in the course of recovering such judgment pursuant to, *inter alia*, the UFTA.

486.   Wayne and his alter ego Mason Capital made each and every one of the Rose Hill Transfers no earlier than 2009.

487.   Plaintiff did not discover these Rose Hill Transfers until after it acquired the Judgment in April 2015 and conducted post-judgment discovery on third parties.

488.   Neither Plaintiff nor its predecessors-in-interest with respect to the Judgment had any reasonable basis to discover the Rose Hill Transfers prior to Plaintiff's review of post-judgment discovery.

489.   Therefore, pursuant to O.C.G.A. § 18-2-79(1), Plaintiff's claim, as the owner of the Judgment, against Moore LLC under Count XIX is timely asserted.

490.   As of September 25, 2009, a fraudulent transfer claim under O.C.G.A. § 18-2-74(a)(1) also was timely if the transfers occurred within the prior four year period starting from September 25, 2005.

491.   Wayne and his alter ego Mason Capital made each and every one of the Rose Hill Transfers no earlier than 2009, which was after September 25, 2005.

111

492.   As described above, Plaintiff, as the successor to FDIC, is entitled to apply the extended limitations period provided for in 12 U.S.C. § 1821(d)(14), which requires Plaintiff to pursue its claim before September 25, 2015.

493.   As described above and pursuant to 12 U.S.C. § 1821(d)(14), Plaintiff's claim, as the owner of the Judgment, against Moore LLC under Count XIX is timely.

494.   Wayne and his alter ego Mason Capital made the Rose Hill Transfers after Wayne had incurred his guaranty obligations to various lenders on hundreds of millions of dollars in loans.

495.   Each and every one of the Rose Hill Transfers was made with the actual intent to hinder, delay, or defraud Wayne's present and future creditors.

496.   Accordingly, the Rose Hill Transfers are voidable under the UFTA, and of no effect as to Plaintiff.

497.   Moore LLC holds the assets that are the subject of the Rose Hill Transfers in a constructive trust for the benefit of Plaintiff.

498.   Plaintiff is entitled to an Order nullifying and voiding the Rose Hill Transfers and declaring that title to and ownership of the assets that are the subject of the Rose Hill Transfers remain with Wayne and/or is entitled to a judgment against Moore LLC for the value of the assets that are the subject of the Rose Hill

112

Transfers or the amount necessary to satisfy Plaintiff's Judgment against Wayne, whichever is less.

499.   Plaintiff is further entitled to an Order from the Court that Plaintiff may levy execution on the assets that are the subject of the Rose Hill Transfers or on their proceeds.

500.   Furthermore, as a result of Moore LLC's actions in participating in the Rose Hill Transfers, Plaintiff has suffered general damages and is entitled to recover from Moore LLC in an amount to be shown at trial.

### Count XX: Statutory Fraudulent Transfer - Insufficient Remaining Assets
### (Rose Hill Transfers to Moore LLC)

501.   Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1-16, 83-96, 116-127, and 156-209 of this Complaint as if fully set forth herein.

502.   Plaintiff, as the successor in interest to FDIC and First Citizens, is entitled to seek collection of the Judgment and assert fraudulent transfer claims in the course of recovering such judgment pursuant to, *inter alia*, the UFTA.

503.   As of September 25, 2009, a fraudulent transfer claim under O.C.G.A. § 18-2-74(a)(2) was timely if the transfers occurred within the prior four year period starting from September 25, 2005.

504.   Wayne and his alter ego Mason Capital made each and every one of the Rose Hill Transfers no earlier than 2009, which was after September 25, 2005.

505.   As described above, Plaintiff, as the successor to FDIC, is entitled to apply the extended limitations period provided for in 12 U.S.C. § 1821(d)(14), which requires Plaintiff to pursue its claim before September 25, 2015.

506.   As described above and pursuant to 12 U.S.C. § 1821(d)(14), Plaintiff's claim, as the owner of the Judgment, against Moore LLC under Count XX is timely.

507.   Wayne and his alter ego Mason Capital made the Rose Hill Transfers after Wayne had incurred his guaranty obligations to various lenders on hundreds of millions of dollars in loans.

508.   The Rose Hill Transfers were made without Wayne receiving a reasonably equivalent value in exchange for the Rose Hill Transfers.

509.   At the time the Rose Hill Transfers were made, Wayne was engaged or was about to engage in a business or transaction for which his remaining assets were unreasonably small in relation to the business or the transaction.

510.   At the time the Rose Hill Transfers were made, Wayne intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay them as they became due.

114

511.   Accordingly, the Rose Hill Transfers are voidable under the UFTA, and of no effect as to Plaintiff.

512.   Moore LLC holds the assets that are the subject of the Rose Hill Transfers in a constructive trust for the benefit of Plaintiff.

513.   Plaintiff is entitled to an Order nullifying and voiding the Rose Hill Transfers and declaring that title to and ownership of the assets that are the subject of the Rose Hill Transfers remain with Wayne and/or is entitled to a judgment against Moore LLC for the value of the assets that are the subject of the Rose Hill Transfers or the amount necessary to satisfy Plaintiff's Judgment against Wayne, whichever is less.

514.   Plaintiff is further entitled to an Order from the Court that Plaintiff may levy execution on the assets that are the subject of the Rose Hill Transfers or on their proceeds.

515.   Furthermore, as a result of Moore LLC's actions in participating in the Rose Hill Transfers, Plaintiff has suffered general damages and is entitled to recover from Moore LLC in an amount to be shown at trial.

## Count XXI: Statutory Fraudulent Transfer - Insolvency
### (Rose Hill Transfers to Moore LLC)

516.   Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1-16, 83-96, 116-127, and 156-209 of this Complaint as if fully set forth herein.

517.   Plaintiff, as the successor in interest to FDIC and First Citizens, is entitled to seek collection of the Judgment and assert fraudulent transfer claims in the course of recovering such judgment pursuant to, *inter alia*, the UFTA.

518.   As of September 25, 2009, a fraudulent transfer claim under O.C.G.A. § 18-2-75(a) was timely if the transfers occurred within the prior four year period starting from September 25, 2005.

519.   Wayne and his alter ego Mason Capital made each and every one of the Rose Hill Transfers no earlier than 2009, which was after September 25, 2005.

520.   As described above, Plaintiff, as the successor to FDIC, is entitled to apply the extended limitations period provided for in 12 U.S.C. § 1821(d)(14), which requires Plaintiff to pursue its claim before September 25, 2015.

521.   As described above and pursuant to 12 U.S.C. § 1821(d)(14), Plaintiff's claim, as the owner of the Judgment, against Moore LLC under Count XXI is timely.

116

522.   Wayne and his alter ego Mason Capital made the Rose Hill Transfers after Wayne had incurred his guaranty obligations to various lenders on hundreds of millions of dollars in loans.

523.   Wayne and his alter ego Mason Capital made the Rose Hill Transfers without receiving a reasonably equivalent value in exchange.

524.   Wayne was insolvent at the time of the Rose Hill Transfers or became insolvent as a result of the Rose Hill Transfers.

525.   Accordingly, the Rose Hill Transfers are voidable under the UFTA, and of no effect as to Plaintiff.

526.   Moore LLC holds the assets that are the subject of the Rose Hill Transfers in a constructive trust for the benefit of Plaintiff.

527.   Plaintiff is entitled to an Order nullifying and voiding the Rose Hill Transfers and declaring that title to and ownership of the assets that are the subject of the Rose Hill Transfers remain with Wayne and/or is entitled to a judgment against Moore LLC for the value of the assets that are the subject of the Rose Hill Transfers or the amount necessary to satisfy Plaintiff's Judgment against Wayne, whichever is less.

117

528.   Plaintiff is further entitled to an Order from the Court that Plaintiff may levy execution on the assets that are the subject of the Rose Hill Transfers or on their proceeds.

529.   Furthermore, as a result of Moore LLC's actions in participating in the Rose Hill Transfers, Plaintiff has suffered general damages and is entitled to recover from Moore LLC in an amount to be shown at trial.

## Count XXII: Statutory Fraudulent Transfer - Actual Intent
### (Detention Transfers to Detention LLC)

530.   Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1-16, 83-96, 116-127, and 156-209 of this Complaint as if fully set forth herein.

531.   Plaintiff, as the successor in interest to FDIC and First Citizens, is entitled to seek collection of the Judgment and assert fraudulent transfer claims in the course of recovering such judgment pursuant to, *inter alia*, the UFTA.

532.   Wayne and his alter ego Mason Capital made each and every one of the Detention Transfers no earlier than 2009.

533.   Plaintiff did not discover these Detention Transfers until after it acquired the Judgment in April 2015 and conducted post-judgment discovery on third parties.

534.   Neither Plaintiff nor its predecessors-in-interest with respect to the Judgment had any reasonable basis to discover the Detention Transfers prior to Plaintiff's review of post-judgment discovery.

535.   Therefore, pursuant to O.C.G.A. § 18-2-79(1), Plaintiff's claim, as the owner of the Judgment, against Detention LLC under Count XXII is timely asserted.

536.   As of September 25, 2009, a fraudulent transfer claim under O.C.G.A. § 18-2-74(a)(1) also was timely if the transfers occurred within the prior four year period starting from September 25, 2005.

537.   Wayne and his alter ego Mason Capital made each and every one of the Detention Transfers no earlier than 2009, which was after September 25, 2005.

538.   As described above, Plaintiff, as the successor to FDIC, is entitled to apply the extended limitations period provided for in 12 U.S.C. § 1821(d)(14), which requires Plaintiff to pursue its claim before September 25, 2015.

539.   As described above and pursuant to 12 U.S.C. § 1821(d)(14), Plaintiff's claim, as the owner of the Judgment, against Detention LLC under Count XXII is timely.

119

540.   Wayne and his alter ego Mason Capital made the Detention Transfers after Wayne had incurred his guaranty obligations to various lenders on hundreds of millions of dollars in loans.

541.   Each and every one of the Detention Transfers was made with the actual intent to hinder, delay, or defraud Wayne's present and future creditors.

542.   Accordingly, the Detention Transfers are voidable under the UFTA, and of no effect as to Plaintiff.

543.   Detention LLC holds the assets that are the subject of the Detention Transfers in a constructive trust for the benefit of Plaintiff.

544.   Plaintiff is entitled to an Order nullifying and voiding the Detention Transfers and declaring that title to and ownership of the assets that are the subject of the Detention Transfers remain with Wayne and/or is entitled to a judgment against Detention LLC for the value of the assets that are the subject of the Detention Transfers or the amount necessary to satisfy Plaintiff's Judgment against Wayne, whichever is less.

545.   Plaintiff is further entitled to an Order from the Court that Plaintiff may levy execution on the assets that are the subject of the Detention Transfers or on their proceeds.

22132142v.1

546.    Furthermore, as a result of Detention LLC's actions in participating in the Detention Transfers, Plaintiff has suffered general damages and is entitled to recover from Detention LLC in an amount to be shown at trial.

## Count XXIII: Statutory Fraudulent Transfer - Insufficient Remaining Assets
### (Detention Transfers to Detention LLC)

547.    Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1-16, 83-96, 116-127, and 156-209 of this Complaint as if fully set forth herein.

548.    Plaintiff, as the successor in interest to FDIC and First Citizens, is entitled to seek collection of the Judgment and assert fraudulent transfer claims in the course of recovering such judgment pursuant to, *inter alia*, the UFTA.

549.    As of September 25, 2009, a fraudulent transfer claim under O.C.G.A. § 18-2-74(a)(2) was timely if the transfers occurred within the prior four year period starting from September 25, 2005.

550.    Wayne and his alter ego Mason Capital made each and every one of the Detention Transfers no earlier than 2009, which was after September 25, 2005.

551.    As described above, Plaintiff, as the successor to FDIC, is entitled to apply the extended limitations period provided for in 12 U.S.C. § 1821(d)(14), which requires Plaintiff to pursue its claim before September 25, 2015.

552.   As described above and pursuant to 12 U.S.C. § 1821(d)(14), Plaintiff's claim, as the owner of the Judgment, against Detention LLC under Count XXIII is timely.

553.   Wayne and his alter ego Mason Capital made the Detention Transfers after Wayne had incurred his guaranty obligations to various lenders on hundreds of millions of dollars in loans.

554.   The Detention Transfers were made without Wayne receiving a reasonably equivalent value in exchange for the Detention Transfers.

555.   At the time the Detention Transfers were made, Wayne was engaged or was about to engage in a business or transaction for which his remaining assets were unreasonably small in relation to the business or the transaction.

556.   At the time the Detention Transfers were made, Wayne intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay them as they became due.

557.   Accordingly, the Detention Transfers are voidable under the UFTA, and of no effect as to Plaintiff.

558.   Detention LLC holds the assets that are the subject of the Detention Transfers in a constructive trust for the benefit of Plaintiff.

559.   Plaintiff is entitled to an Order nullifying and voiding the Detention Transfers and declaring that title to and ownership of the assets that are the subject of the Detention Transfers remain with Wayne and/or is entitled to a judgment against Detention LLC for the value of the assets that are the subject of the Detention Transfers or the amount necessary to satisfy Plaintiff's Judgment against Wayne, whichever is less.

560.   Plaintiff is further entitled to an Order from the Court that Plaintiff may levy execution on the assets that are the subject of the Detention Transfers or on their proceeds.

561.   Furthermore, as a result of Detention LLC's actions in participating in the Detention Transfers, Plaintiff has suffered general damages and is entitled to recover from Detention LLC in an amount to be shown at trial.

## Count XXIV: Statutory Fraudulent Transfer - Insolvency
### (Detention Transfers to Detention LLC)

562.   Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1-16, 83-96, 116-127, and 156-209 of this Complaint as if fully set forth herein.

563.    Plaintiff, as the successor in interest to FDIC and First Citizens, is entitled to seek collection of the Judgment and assert fraudulent transfer claims in the course of recovering such judgment pursuant to, *inter alia*, the UFTA.

564.    As of September 25, 2009, a fraudulent transfer claim under O.C.G.A. § 18-2-75(a) was timely if the transfers occurred within the prior four year period starting from September 25, 2005.

565.    Wayne and his alter ego Mason Capital made each and every one of the Detention Transfers no earlier than 2009, which was after September 25, 2005.

566.    As described above, Plaintiff, as the successor to FDIC, is entitled to apply the extended limitations period provided for in 12 U.S.C. § 1821(d)(14), which requires Plaintiff to pursue its claim before September 25, 2015.

567.    As described above and pursuant to 12 U.S.C. § 1821(d)(14), Plaintiff's claim, as the owner of the Judgment, against Detention LLC under Count XXIV is timely.

568.    Wayne and his alter ego Mason Capital made the Detention Transfers after Wayne had incurred his guaranty obligations to various lenders on hundreds of millions of dollars in loans.

569.    Wayne and his alter ego Mason Capital made the Detention Transfers without receiving a reasonably equivalent value in exchange.

124

570.   Wayne was insolvent at the time of the Detention Transfers or became insolvent as a result of the Detention Transfers.

571.   Accordingly, the Detention Transfers are voidable under the UFTA, and of no effect as to Plaintiff.

572.   Detention LLC holds the assets that are the subject of the Detention Transfers in a constructive trust for the benefit of Plaintiff.

573.   Plaintiff is entitled to an Order nullifying and voiding the Detention Transfers and declaring that title to and ownership of the assets that are the subject of the Detention Transfers remain with Wayne and/or is entitled to a judgment against Detention LLC for the value of the assets that are the subject of the Detention Transfers or the amount necessary to satisfy Plaintiff's Judgment against Wayne, whichever is less.

574.   Plaintiff is further entitled to an Order from the Court that Plaintiff may levy execution on the assets that are the subject of the Detention Transfers or on their proceeds.

575.   Furthermore, as a result of Detention LLC's actions in participating in the Detention Transfers, Plaintiff has suffered general damages and is entitled to recover from Detention LLC in an amount to be shown at trial.

22132142v.1

## Count XXV:  Common Law Fraudulent Transfers - Action at Law
### (All Transfers to Defendants)

576.   Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1-16, 21-65, and 83-209 of this Complaint as if fully set forth herein.

577.   Plaintiff, as the successor in interest to FDIC and First Citizens, is entitled to seek collection of the Judgment and assert fraudulent transfer claims in the course of recovering such judgment pursuant to, *inter alia*, Georgia common law.

578.   Under Georgia law, a claim for common law fraudulent transfer may be brought (a) with respect to real property, seven (7) years from such transfer, and (b) with respect to personalty, four (4) years from such transfer.  Additionally, such limitation periods are equitably tolled until discovery by the plaintiff.

579.   Plaintiff did not discover the transfers until after it acquired the Judgment in April 2015 and conducted post-judgment discovery on third parties.

580.   Neither Plaintiff nor its predecessors-in-interest with respect to the Judgment, had a reasonable basis to discover the transfers prior to Plaintiff's review of post-judgment discovery.

581.   Therefore, pursuant to applicable Georgia law, Plaintiff's claim, as the owner of the Judgment, against Defendants under Count XXV is timely asserted.

126

582.   As of September 25, 2009, a Georgia common law fraudulent transfer claim also was timely if the transfers occurred (a) as to personalty transferred, within the prior four year period starting from September 25, 2005, and (b) with respect to real property transferred, the prior seven year period starting from September 25, 2002.

583.   All of the transfers were made after September 25, 2002 and September 25, 2005.

584.   As described above, Plaintiff, as the successor to FDIC, is entitled to apply the extended limitations period provided for in 12 U.S.C. § 1821(d)(14), which requires Plaintiff to pursue its claim before September 25, 2015.

585.   As described above and pursuant to 12 U.S.C. § 1821(d)(14), Plaintiff's claim, as the owner of the Judgment, against Mason Capital under Count XXV is timely.

586.   Wayne made the transfers after he had incurred his guaranty obligations to various lenders on hundreds of millions of dollars in loans.

587.   The Transfers interfere with the rights of Plaintiff as a judgment lien holder of Wayne in violation of O.C.G.A. § 18-2-21.

588.   The Transfers by Wayne to Defendants were fraudulent transfers under the common law and are void and of no effect as to Plaintiff.

589.   Defendants hold the assets that are the subject of the transfers in a constructive trust for the benefit of Plaintiff.

590.   Plaintiff is entitled to an Order nullifying and voiding the transfers and declaring that title to and ownership of the assets that are the subject of the transfers remain with Wayne and/or is entitled to a judgment against Defendants for the value of the assets that are the subject of the transfers or the amount necessary to satisfy Plaintiff's Judgment against Wayne, whichever is less.

591.   Plaintiff is further entitled to an Order from the Court that Plaintiff may levy execution on the assets that are the subject of the transfers or on their proceeds.

592.   Furthermore, as a result of Defendants' actions in participating in the transfers, Plaintiff has suffered general damages and is entitled to recover from Defendants in an amount to be shown at trial.

### Count XXVI:  Common Law Fraudulent Transfers - Action in Equity
### (All Transfers to Defendants)

593.   Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1-16, 21-65, and 83-209 of this Complaint as if fully set forth herein.

128

594.    Plaintiff, as the successor in interest to FDIC and First Citizens, is entitled to seek collection of the Judgment and assert fraudulent transfer claims in the course of recovering such judgment pursuant to, *inter alia*, the UFTA.

595.    Under Georgia law, a claim for common law fraudulent transfer may be brought (a) with respect to real property, seven (7) years from such transfer, and (b) with respect to personalty, four (4) years from such transfer.  Additionally, such limitation periods are equitably tolled until discovery by the plaintiff.

596.    Plaintiff did not discover the transfers until after it acquired the Judgment in April 2015 and conducted post-judgment discovery on third parties.

597.    Neither Plaintiff nor its predecessors-in-interest with respect to the Judgment, had a reasonable basis to discover the transfers prior to Plaintiff's review of post-judgment discovery.

598.    Therefore, pursuant to applicable Georgia law, Plaintiff's claim, as the owner of the Judgment, against Defendants under Count XXVI is timely asserted.

599.    As of September 25, 2009, a Georgia common law fraudulent transfer claim also was timely if the transfers occurred (a) as to personalty transferred, within the prior four year period starting from September 25, 2005, and (b) with respect to real property transferred, the prior seven year period starting from September 25, 2002.

600.   All of the transfers were made after September 25, 2002 and September 25, 2005.

601.   As described above, Plaintiff, as the successor to FDIC, is entitled to apply the extended limitations period provided for in 12 U.S.C. § 1821(d)(14), which requires Plaintiff to pursue its claim before September 25, 2015.

602.   As described above and pursuant to 12 U.S.C. § 1821(d)(14), Plaintiff's claim, as the owner of the Judgment, against Defendants under Count XXVI is timely.

603.   Wayne made the transfers after he had incurred his guaranty obligations to various lenders on hundreds of millions of dollars in loans.

604.   The transfers interfere with the rights of Plaintiff as a judgment lien holder of Wayne in violation of O.C.G.A. § 18-2-21 and were fraudulent transfers under the common law, making such transfers subject to attack in equity.

605.   In addition, in making the transfers, Wayne acted contrary to legal or equitable duty, trust, or confidence, justly reposed, which is contrary to good consciences and operated to the injury of Plaintiff in violation of O.C.G.A. § 23-2-51(b).

606.   Plaintiff respectfully requests that the Court exercise its equitable power to void, set aside, and annul the transfers, find that Defendants hold the

130

assets that are the subject of the transfers in a constructive trust for the benefit of Plaintiff until returned, and grant such other and further relief as the Court deems proper.

### Count XXVII:  Civil Conspiracy

### (Against Tucker and SMSA Defendants)

607.   Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1-16, and 83-209 of this Complaint as if fully set forth herein.

608.   Plaintiff, as the successor in interest to FDIC and First Citizens, is entitled to seek collection of the Judgment and assert fraudulent transfer claims in the course of recovering such judgment pursuant to, *inter alia*, Georgia common law.

609.   Under Georgia law, a claim for common law fraudulent transfer may be brought (a) with respect to real property, seven (7) years from such transfer, and (b) with respect to personalty, four (4) years from such transfer.  Additionally, such limitation periods are equitably tolled until discovery by the plaintiff.

610.   Plaintiff did not discover the transfers until after it acquired the Judgment in April 2015 and conducted post-judgment discovery on third parties.

131

611.   Neither Plaintiff nor its predecessors-in-interest with respect to the Judgment, had a reasonable basis to discover the transfers prior to Plaintiff's review of post-judgment discovery.

612.   Therefore, pursuant to applicable Georgia law, Plaintiff's claim, as the owner of the Judgment, against Defendants under Count XXVII is timely asserted.

613.   As of September 25, 2009, a Georgia common law fraudulent transfer claim also was timely if the transfers occurred (a) as to personalty transferred, within the prior four year period starting from September 25, 2005, and (b) with respect to real property transferred, the prior seven year period starting from September 25, 2002.

614.   All of the transfers were made after September 25, 2002 and September 25, 2005.

615.   As described above, Plaintiff, as the successor to FDIC, is entitled to apply the extended limitations period provided for in 12 U.S.C. § 1821(d)(14), which requires Plaintiff to pursue its claim before September 25, 2015.

616.   As described above and pursuant to 12 U.S.C. § 1821(d)(14), Plaintiff's claim, as the owner of the Judgment, against Mason Capital under Count XXVII is timely.

617.   Wayne made the transfers after he had incurred his guaranty obligations to various lenders on hundreds of millions of dollars in loans.

618.   The transfers interfere with the rights of Plaintiff as a judgment lien holder of Wayne in violation of O.C.G.A. § 18-2-21.

619.   The transfers by Wayne to Defendants were fraudulent transfers under the common law and are void and of no effect as to Plaintiff.

620.   Defendants hold the assets that are the subject of the transfers in a constructive trust for the benefit of Plaintiff.

621.   At least two of Defendants, Tucker and SMSA, agreed to combine, conspire, act in concert or participate in, an unlawful act or scheme to effect a tort against Plaintiff, namely, the fraudulent transfers of assets to each other in violation of the Georgia UTFA.

622.   Namely, at least two of  Defendants, Tucker and SMSA, agreed to combine, conspire, act in concert or participate in, an effort to defraud creditors by placing certain Judgment ahead of other creditors  in order to avoid Judgment against Wayne and shield all of Wayne's assets.

623.   Alternatively, at least two of the Defendants, Tucker and SMSA, agreed to combine, conspire, act in concert or participate in, a lawful act

133

accomplished by unlawful means which constituted tort, namely, the fraudulent transfers of assets to each other in violation of the Georgia UTFA.

624.   At a minimum, at least two of Defendants, Tucker and SMSA, agreed to combine, conspire, act in concert or participate in the shielding of Wayne's assets through the purchase and manipulation of the $5,000,000 Synovus Judgment, and other transfers of Wayne's assets.

625.   Indeed, two or more of the Defendants accomplished the fraudulent transfers of assets in violation of the Georgia UTFA, causing Plaintiff to incur substantial damages.

626.   Plaintiff is entitled to an Order nullifying and voiding the transfers and declaring that title to and ownership of the assets that are the subject of the transfers remain with Wayne and/or is entitled to a judgment against Defendants for the value of the assets that are the subject of the transfers or the amount necessary to satisfy Plaintiff's judgment against Wayne, whichever is less.

627.   Plaintiff is further entitled to an Order from the Court that Plaintiff may levy execution on the assets that are the subject of the transfers or on their proceeds.

134

628.   Furthermore, as a result of Defendants' actions in participating in the transfers, Plaintiff has suffered general damages and is entitled to recover from Defendants in an amount to be shown at trial.

629.   Plaintiff respectfully requests that the Court exercise its power to void, set aside, and annul the transfers, find that Defendants hold the assets that are the subject of the transfers in a constructive trust for the benefit of Plaintiff until returned, and grant such other and further relief as the Court deems proper.

## Count XXVIII:  Civil Conspiracy

### (Against Frank Hanna, TLD and DRI Defendants)

630.   Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1-16, and 83-209 of this Complaint as if fully set forth herein.

631.   Plaintiff, as the successor in interest to FDIC and First Citizens, is entitled to seek collection of the judgment and assert fraudulent transfer claims in the course of recovering such judgment pursuant to, *inter alia*, Georgia common law.

632.   Under Georgia law, a claim for common law fraudulent transfer may be brought (a) with respect to real property, seven (7) years from such transfer, and (b) with respect to personalty, four (4) years from such transfer.  Additionally, such limitation periods are equitably tolled until discovery by the plaintiff.

135

633.   Plaintiff did not discover the transfers until after it acquired the Judgment in April 2015 and conducted post-judgment discovery on third parties.

634.   Neither Plaintiff nor its predecessors-in-interest with respect to the Judgment, had a reasonable basis to discover the transfers prior to Plaintiff's review of post-judgment discovery.

635.   Therefore, pursuant to applicable Georgia law, Plaintiff's claim, as the owner of the June 2014 Judgment, against Defendants under Count XXVIII is timely asserted.

636.   As of September 25, 2009, a Georgia common law fraudulent transfer claim also was timely if the transfers occurred (a) as to personalty transferred, within the prior four year period starting from September 25, 2005, and (b) with respect to real property transferred, the prior seven year period starting from September 25, 2002.

637.   All of the transfers were made after September 25, 2002 and September 25, 2005.

638.   As described above, Plaintiff, as the successor to FDIC, is entitled to apply the extended limitations period provided for in 12 U.S.C. § 1821(d)(14), which requires Plaintiff to pursue its claim before September 25, 2015.

639.   As described above and pursuant to 12 U.S.C. § 1821(d)(14), Plaintiff's claim, as the owner of the Judgment, against Mason Capital under Count XXVIII is timely.

640.   Wayne made the transfers after he had incurred his guaranty obligations to various lenders on hundreds of millions of dollars in loans.

641.   The transfers interfere with the rights of Plaintiff as a judgment lien holder of Wayne in violation of O.C.G.A. § 18-2-21.

642.   The transfers by Wayne to Defendants were fraudulent transfers under the common law and are void and of no effect as to Plaintiff.

643.   Defendants hold the assets that are the subject of the transfers in a constructive trust for the benefit of Plaintiff.

644.   At least two or more of Defendants, including Frank , TDL  and DRI, agreed to combine, conspire, act in concert or participate in, an unlawful act or scheme to effect a tort against Plaintiff, namely, the fraudulent transfers of assets to each other in violation of the Georgia UTFA.

645.   Namely, at least two or more of  Defendants, including Frank, TDL and DRI, agreed to combine, conspire, act in concert or participate in, an effort to defraud creditors by placing certain Judgment ahead of other creditors  in order to avoid Judgment against Wayne and shield all of Wayne's assets.

137

646.   Alternatively, at two or more of Defendants, including Frank, TDL and DRI, agreed to combine, conspire, act in concert or participate in, a lawful act accomplished by unlawful means which constituted tort, namely, the fraudulent transfers of assets to each other in violation of the Georgia UTFA.

647.   At a minimum, at least two or more of Defendants, including, Frank Hanna, TDL and DRI, agreed to combine, conspire, act in concert or participate in the shielding of Wayne's assets through the purchase and manipulation of the Synovus Judgment, and other transfers of Wayne's assets.

648.   Indeed, two or more of the Defendants accomplished the fraudulent transfers of assets in violation of the Georgia UTFA, causing Plaintiff to incur substantial damages.

649.   Plaintiff is entitled to an Order nullifying and voiding the transfers and declaring that title to and ownership of the assets that are the subject of the transfers remain with Wayne and/or is entitled to a judgment against Defendants for the value of the assets that are the subject of the transfers or the amount necessary to satisfy Plaintiff's judgment against Wayne, whichever is less.

650.   Plaintiff is further entitled to an Order from the Court that Plaintiff may levy execution on the assets that are the subject of the transfers or on their proceeds.

138

651.   Furthermore, as a result of Defendants' actions in participating in the transfers, Plaintiff has suffered general damages and is entitled to recover from Defendants in an amount to be shown at trial.

652.   Plaintiff respectfully requests that the Court exercise its power to void, set aside, and annul the transfers, find that Defendants hold the assets that are the subject of the transfers in a constructive trust for the benefit of Plaintiff until returned, and grant such other and further relief as the Court deems proper.

## Count XXIX:  Civil Conspiracy
### (against Lori)

653.   Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1-16, and 83-209 of this Complaint as if fully set forth herein.

654.   Plaintiff, as the successor in interest to FDIC and First Citizens, is entitled to seek collection of the Judgment and assert fraudulent transfer claims in the course of recovering such judgment pursuant to, *inter alia*, Georgia common law.

655.   Under Georgia law, a claim for common law fraudulent transfer may be brought (a) with respect to real property, seven (7) years from such transfer, and (b) with respect to personalty, four (4) years from such transfer.  Additionally, such limitation periods are equitably tolled until discovery by the plaintiff.

139

656.   Plaintiff did not discover the transfers until after it acquired the judgment in April 2015 and conducted post-judgment discovery on third parties.

657.   Neither Plaintiff nor its predecessors-in-interest with respect to the judgment, had a reasonable basis to discover the transfers prior to Plaintiff's review of post-judgment discovery.

658.   Therefore, pursuant to applicable Georgia law, Plaintiff's claim, as the owner of the June 2014 Judgment, against Defendants under Count XXIX is timely asserted.

659.   As of September 25, 2009, a Georgia common law fraudulent transfer claim also was timely if the transfers occurred (a) as to personalty transferred, within the prior four year period starting from September 25, 2005, and (b) with respect to real property transferred, the prior seven year period starting from September 25, 2002.

660.   All of the transfers were made after September 25, 2002 and September 25, 2005.

661.   As described above, Plaintiff, as the successor to FDIC, is entitled to apply the extended limitations period provided for in 12 U.S.C. § 1821(d)(14), which requires Plaintiff to pursue its claim before September 25, 2015.

140

662.   As described above and pursuant to 12 U.S.C. § 1821(d)(14),

Plaintiff's claim, as the owner of the Judgment, against Mason Capital under Count

XXIX is timely.

663.   Wayne made the transfers after he had incurred his guaranty

obligations to various lenders on hundreds of millions of dollars in loans.

664.   The transfers interfere with the rights of Plaintiff as a judgment lien

holder of Wayne in violation of O.C.G.A. § 18-2-21.

665.   The transfers by Wayne to Defendants were fraudulent transfers under

the common law and are void and of no effect as to Plaintiff.

666.   Defendants hold the assets that are the subject of the transfers in a

constructive trust for the benefit of Plaintiff.

667.   At least two or more of Defendants, including Lori, agreed to

combine, conspire, act in concert or participate in, an unlawful act or scheme to

effect a tort against Plaintiff, namely, the fraudulent transfers of assets to each

other in violation of the Georgia UTFA.

668.   Namely, at least two or more of  Defendants, including Lori, agreed to

combine, conspire, act in concert or participate in, an effort to defraud creditors by

placing certain Judgment ahead of other creditors  in order to avoid Judgment

against Wayne and shield all of Wayne's assets.

669.   Alternatively, at two or more of Defendants, including Lori, agreed to combine, conspire, act in concert or participate in, a lawful act accomplished by unlawful means which constituted tort, namely, the fraudulent transfers of assets to each other in violation of the Georgia UTFA.

670.   At a minimum, at least two or more of Defendants, including, Lori, agreed to combine, conspire, act in concert or participate in the shielding of Wayne's assets through the purchase and manipulation of the Synovus Judgment, and other transfers of Wayne's assets.

671.   Indeed, two or more of the Defendants accomplished the fraudulent transfers of assets in violation of the Georgia UTFA, causing Plaintiff to incur substantial damages.

672.   Plaintiff is entitled to an Order nullifying and voiding the transfers and declaring that title to and ownership of the assets that are the subject of the transfers remain with Wayne and/or is entitled to a judgment against Defendants for the value of the assets that are the subject of the transfers or the amount necessary to satisfy Plaintiff's judgment against Wayne, whichever is less.

673.   Plaintiff is further entitled to an Order from the Court that Plaintiff may levy execution on the assets that are the subject of the transfers or on their proceeds.

674.   Furthermore, as a result of Defendants' actions in participating in the transfers, Plaintiff has suffered general damages and is entitled to recover from Defendants in an amount to be shown at trial.

675.   Plaintiff respectfully requests that the Court exercise its power to void, set aside, and annul the transfers, find that Defendants hold the assets that are the subject of the transfers in a constructive trust for the benefit of Plaintiff until returned, and grant such other and further relief as the Court deems proper.

## Count XXX:  Civil Conspiracy

### (against Wayne)

676.   Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1-16, and 83-209 of this Complaint as if fully set forth herein.

677.   Plaintiff, as the successor in interest to FDIC and First Citizens, is entitled to seek collection of the Judgment and assert fraudulent transfer claims in the course of recovering such judgment pursuant to, *inter alia*, Georgia common law.

678.   Under Georgia law, a claim for common law fraudulent transfer may be brought (a) with respect to real property, seven (7) years from such transfer, and (b) with respect to personalty, four (4) years from such transfer.  Additionally, such limitation periods are equitably tolled until discovery by the plaintiff.

143

679.   Plaintiff did not discover the transfers until after it acquired the Judgment in April 2015 and conducted post-judgment discovery on third parties.

680.   Neither Plaintiff nor its predecessors-in-interest with respect to the Judgment, had a reasonable basis to discover the transfers prior to Plaintiff's review of post-judgment discovery.

681.   Therefore, pursuant to applicable Georgia law, Plaintiff's claim, as the owner of the June 2014 Judgment, against Defendants under Count XXX is timely asserted.

682.   As of September 25, 2009, a Georgia common law fraudulent transfer claim also was timely if the transfers occurred (a) as to personalty transferred, within the prior four year period starting from September 25, 2005, and (b) with respect to real property transferred, the prior seven year period starting from September 25, 2002.

683.   All of the transfers were made after September 25, 2002 and September 25, 2005.

684.   As described above, Plaintiff, as the successor to FDIC, is entitled to apply the extended limitations period provided for in 12 U.S.C. § 1821(d)(14), which requires Plaintiff to pursue its claim before September 25, 2015.

685.   As described above and pursuant to 12 U.S.C. § 1821(d)(14), Plaintiff's claim, as the owner of the Judgment, against Mason Capital under Count XXX is timely.

686.   Wayne made the transfers after he had incurred his guaranty obligations to various lenders on hundreds of millions of dollars in loans.

687.   The transfers interfere with the rights of Plaintiff as a judgment lien holder of Wayne in violation of O.C.G.A. § 18-2-21.

688.   The transfers by Wayne to Defendants were fraudulent transfers under the common law and are void and of no effect as to Plaintiff.

689.   Defendants hold the assets that are the subject of the transfers in a constructive trust for the benefit of Plaintiff.

690.   At least two or more of Defendants, including Wayne, agreed to combine, conspire, act in concert or participate in, an unlawful act or scheme to effect a tort against Plaintiff, namely, the fraudulent transfers of assets to each other in violation of the Georgia UTFA.

691.   Namely, at least two or more of  Defendants, including Wayne, agreed to combine, conspire, act in concert or participate in, an effort to defraud creditors by placing certain Judgment ahead of other creditors  in order to avoid Judgment against Wayne and shield all of Wayne's assets.

692.   Alternatively, at two or more of  Defendants, including Wayne, agreed to combine, conspire, act in concert or participate in, a lawful act accomplished by unlawful means which constituted tort, namely, the fraudulent transfers of assets to each other in violation of the Georgia UTFA.

693.   At a minimum, at least two or more of Defendants, including, Wayne, agreed to combine, conspire, act in concert or participate in the shielding of Wayne's assets through the purchase and manipulation of the Synovus Judgment, and other transfers of Wayne's assets.

694.   Indeed, two or more of the Defendants accomplished the fraudulent transfers of assets in violation of the Georgia UTFA, causing Plaintiff to incur substantial damages.

695.   Plaintiff is entitled to an Order nullifying and voiding the transfers and declaring that title to and ownership of the assets that are the subject of the transfers remain with Wayne and/or is entitled to a judgment against Defendants for the value of the assets that are the subject of the transfers or the amount necessary to satisfy Plaintiff's judgment against Wayne, whichever is less.

696.   Plaintiff is further entitled to an Order from the Court that Plaintiff may levy execution on the assets that are the subject of the transfers or on their proceeds.

146

697.   Furthermore, as a result of Defendants' actions in participating in the transfers, Plaintiff has suffered general damages and is entitled to recover from Defendants in an amount to be shown at trial.

698.   Plaintiff respectfully requests that the Court exercise its power to void, set aside, and annul the transfers, find that Defendants hold the assets that are the subject of the transfers in a constructive trust for the benefit of Plaintiff until returned, and grant such other and further relief as the Court deems proper.

## Count XXXI

### (Statutory Fraudulent Transfers - Actual Intent)

699.   Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1-16, 83-96, 116-127, and 156-209 of this Complaint as if fully set forth herein.

700.   Plaintiff, as the successor in interest to FDIC and First Citizens, is entitled to seek collection of the judgments and assert fraudulent transfer claims in the course of recovering such judgment pursuant to, *inter alia*, the UFTA.

701.   Wayne and his alter ego Mason Capital made each and every one of the transfers no earlier than 2009.

702.   Plaintiff did not discover these transfers until after it acquired the judgments in April 2015 and conducted post-judgment discovery on third parties.

147

703.   Neither Plaintiff nor its predecessors-in-interest with respect to the judgments had any reasonable basis to discover the transfers prior to Plaintiff's review of post-judgment discovery.

704.   Therefore, pursuant to O.C.G.A. § 18-2-79(1), Plaintiff's claim, as the owner of the judgments, against Wayne, is timely asserted.

705.   As of September 25, 2009, a fraudulent transfer claim under O.C.G.A. § 18-2-74(a)(1) also was timely if the transfers occurred within the prior four year period starting from September 25, 2005.

706.   Wayne and his alter ego Mason Capital made each and every one of the transfers no earlier than 2009, which was after September 25, 2005.

707.   The transfers involving SMSA, TLD and Tucker  and the Synovus Judgment and Frank and DRI and the Wells Fargo Judgment, and other transfers were transfers to Wayne himself and Wayne was accomplished with the actual intent to defraud his creditors and, therefore, must be avoided.

708.   As described above, Plaintiff, as the successor to FDIC, is entitled to apply the extended limitations period provided for in 12 U.S.C. § 1821(d)(14), which requires Plaintiff to pursue its claim before September 25, 2015.

709.   As described above and pursuant to 12 U.S.C. § 1821(d)(14), Plaintiff's claim, as the owner of the judgments, is timely.

148

710.   Wayne and his alter ego Mason Capital made the transfers after Wayne had incurred his guaranty obligations to various lenders on hundreds of millions of dollars in loans.

711.   Each and every one of the transfers was made with the actual intent to hinder, delay, or defraud Wayne's present and future creditors.

712.   Accordingly, the transfers are voidable under the UFTA, and of no effect as to Plaintiff.

713.   Various entities owned and/or controlled by Wayne holds the assets that are the subject of the transfers in a constructive trust for the benefit of Plaintiff.

714.   Plaintiff is entitled to an Order nullifying and voiding the transfers and declaring that title to and ownership of the assets that are the subject of the transfers remain with Wayne and/or is entitled to a judgment against Wayne or entities owned and/or controlled by Wayne for the value of the assets that are the subject of the transfers or the amount necessary to satisfy Plaintiff's judgments against Wayne, whichever is less.

715.   Plaintiff is further entitled to an Order from the Court that Plaintiff may levy execution on the assets that are the subject of the transfers or on their proceeds.

149

716.   Furthermore, as a result of actions in participating in the transfers, Plaintiff has suffered general damages and is entitled to recover from Wayne or entities owned/controlled by Wayne in an amount to be shown at trial.

## Count XXXII:  Charging Order

717.   Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1-16, 21-65, and 83-209 of this Complaint as if fully set forth herein.

718.   As a judgment creditor, Plaintiff satisfies the prerequisites for imposition of a charging order against any membership interests in limited liability companies that were transferred by Wayne to one or more Defendants under O.C.G.A. § 14-11-504(a).

719.   Plaintiff hereby requests that the Court impose a charging order in its favor on all such membership interests.

## Count XXXIII:  Appointment of Receiver

720.   Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1-16, 21-65, and 83-209 of this Complaint as if fully set forth herein.

721.   There is manifest danger of loss, destruction or material injury to Plaintiff as a result of the current status and management of the assets that are the subject of the transfers.

22132142v.1

722.   More specifically, Plaintiff has a legitimate and genuine concern that absent an appointment of a receiver for the assets that are the subject of the transfers, Wayne and/or Defendants will transfer such assets once again in an effort to place such assets beyond the reach of Wayne's creditors and render any judgment in this action ineffectual.

723.   Wayne previously agreed to the appointment of a receiver in connection with the various loans that he has refused to repay.

724.   The rights of Plaintiff cannot otherwise be protected unless a third party manages such assets.

725.   As such, Plaintiff seeks the appointment of a receiver under Fed. R. Civ. P. 66, 28 U.S.C. § 959(b) and O.C.G.A. § 9-8-3 to take charge of the assets that are the subject of the transfers and their proceeds and to take control of the affairs of MF Trust, Mason Capital, Lone Pine, MFC LLC, Mascap LLC, ADCA LLC, and MF Management.

### Count XXXIV:  Preliminary and Permanent Injunction

726.   Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1-16, 21-65, and 83-209 of this Complaint as if fully set forth herein.

727.   There is a risk of imminent and irreparable harm to Plaintiff unless Defendants are immediately and permanently enjoined from further transferring,

151

selling, pledging, encumbering, assigning, liquidating, and/or otherwise disposing of any and all assets that are the subject of the transfers, as well as any assets of Defendants.

728.   Plaintiff respectfully requests that the Court exercise its power to restrain the impairment, alienation, and/or waste of assets subject to levy and sale in satisfaction of a judgment with the issuance of an immediate freeze and preliminary injunction enjoining Defendants from directly or indirectly further transferring, selling, pledging, encumbering, assigning, liquidating, or otherwise disposing of any of their assets.

729.   By virtue of the foregoing, Plaintiff has demonstrated a likelihood of success on the merits and that a balancing of the equities favors the issuance of a permanent injunction against Defendants, consistent with the terms detailed above.

730.   Unless Defendants are enjoined from the foregoing conduct, Plaintiff will be immediately and irreparably harmed.

731.   Plaintiff has no adequate remedy at law, as its damages will continue in perpetuity if Defendants are not enjoined.

732.   Plaintiff is entitled to an immediate Preliminary Injunction pursuant to Fed. R. Civ. P. 65, common law, and O.C.G.A. § 9-11-65.

733.    Plaintiff requests that the Court issue an immediate Preliminary Injunction enjoining Defendants, directly or indirectly, alone or in concert with others, from the conduct described above until such time as discovery can be taken and final trial on the merits can be held, at which point a Permanent Injunction should be entered.

WHEREFORE, Plaintiff demands judgment as follows:

1.    That Wayne and Mason Capital be adjudged as alter egos and that Mason Capital's corporate form and any purported separate existence be disregarded.

2.    That each and every one of the transfers be adjudged voidable and set aside in order to satisfy the amounts owed to Plaintiff.

3.    That each and every one of the transfers be disregarded and that Plaintiff be permitted to attach and levy execution upon the Securities, Cash and Real Estate Assets in order to satisfy the amounts owed to Plaintiff.

4.    That the Court enter a charging lien order on all LLC interests held by Defendants as described above.

5.    That the Court appoint a receiver to take charge of the assets, including all LLCs and real properties, that are the subject of the transfers and their

153

proceeds and to take control of the affairs of MF Trust, Mason Capital, Lone Pine, and all LLCs and real properties owned or held by any Defendants.

6.    That the Court issue a preliminary injunction enjoining Defendants, directly or indirectly, alone or in concert with others, from the conduct described above until such time as discovery can be taken and final trial on the merits can be held, at which point a permanent injunction should be entered.

7.    That the Court fix Plaintiff's reasonable attorney's fees, post-judgment interest (as applicable), and enter judgment therefor against Defendants.

8.    That the Court enter any other Order and grant Plaintiff any other relief deemed just and proper.

Dated: October 30, 2015                     Respectfully submitted,

                                            SEYFARTH SHAW LLP

                                            By: */s/* Eric F. Barton
                                            Georgia Bar No. 040740
                                            SEYFARTH SHAW LLP
                                            1075 Peachtree Street, Suite 2500
                                            Atlanta, Georgia 30309
                                            Tel: (404) 885-1500
                                            Fax: (404) 892-7056
                                            E-mail:  ebarton@seyfarth.com

                                            Jason J. DeJonker (*pro hac vice*)
                                            M. Ryan Pinkston (*pro hac vice*)

154

131 S. Dearborn Street, Suite 2400
Chicago, Illinois 60603-5511
Tel: (312) 460-5000
Fax: (312) 460-7000
E-mail: jdejonker@seyfarth.com
          rpinkston@seyfarth.com


Byung J. "Bjay" Pak
Georgia Bar No. 559457
CHALMERS PAK & BURCH LLC
5805 State Bridge Road, #G77
Johns Creek, Georgia 30097
Tel: 678-637-2654
Fax: 866-598-6089
E-mail: bpak@cpblawgroup.com

***Attorneys for Edgefield Holdings, LLC***

155

**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **EDGEFIELD HOLDINGS, LLC,** | ) | |
| | ) | **CIVIL ACTION** |
| **PLAINTIFF,** | ) | |
| | ) | **NO. 1:15-CV-02481-WSD** |
| **vs.** | ) | |
| | ) | |
| **ANNETTE MASON, individually and as** | ) | |
| **trustee, JAMIE MASON HAMIL,** | ) | |
| **K. W. MASON COMPANY, INC.,** | ) | |
| **LONE PINE, INC., MASON CAPITAL,** | ) | |
| **LLC, and THE MASON FAMILY** | ) | |
| **TRUST,** | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |
| _____ | ) | |

**RULE 7.1(D) CERTIFICATE**

This is to certify that the within and foregoing document was prepared in 14 point Times New Roman font and complies with the margin and type requirements of this Court pursuant to Local Rule 7.1.

SEYFARTH SHAW LLP

By: /s/ Eric F. Barton
    Eric F. Barton
    Georgia Bar No. 040740

22132142v.1

**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **EDGEFIELD HOLDINGS, LLC,** | ) | |
| | ) | **CIVIL ACTION** |
| **PLAINTIFF,** | ) | |
| | ) | **NO. 1:15-CV-02481-WSD** |
| **vs.** | ) | |
| | ) | |
| **ANNETTE MASON, individually and as** | ) | |
| **trustee, JAMIE MASON HAMIL,** | ) | |
| **K. W. MASON COMPANY, INC.,** | ) | |
| **LONE PINE, INC., MASON CAPITAL,** | ) | |
| **LLC, and THE MASON FAMILY** | ) | |
| **TRUST,** | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |
| _____ | ) | |

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that I have this day, October 30, 2015, served a copy of the foregoing document upon all parties to this matter by causing a true and correct copy of same to be filed with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record and by placing same in the U.S. Mail with proper postage affixed addressed as follows:

22132142v.1

Roy Barnes
James Cameron Tribble
Barnes Law Group, LLC
31 Atlanta Street
Marietta, GA 30060
Roy@barneslawgroup.com

Everette Doffermyre
Jonathan Palmer
Doffermyre Shields Canfield &
Knowles, LLC
1355 Peachtree Street, NE, Suite 1900
Atlanta, Georgia 30309
edoffermyre@dsckd.com
jpalmer@dsckd.com

Kevin Quirk
Quirk & Quirk, LLC
6000 Lake Forrest Drive, NW
Suite 300, Century Springs West
Atlanta, Georgia 30328
kq@quirklaw.com

Gerald Davidson, Jr.
Kenneth W. Stroud
Mahaffey Pickens Tucker, LLP
1550 North Brown Road, Suite 125
Lawrenceville, GA 30043
gdavidson@mptlawfirm.com

John A. Christy
Scott D. McAlpine
Schreeder, Wheeler & Flint, LLP
1100 Peachtree Street, NE
Suite 800
Atlanta, Georgia 30309
jchristy@swfllp.com
smcalpine@swfllp.com

/s/ Eric F. Barton
Eric F. Barton
Georgia Bar No. 040740
SEYFARTH SHAW LLP
1075 Peachtree Street, Suite 2500
Atlanta, Georgia 30309
Tel: (404) 885-1500
Fax: (404) 892-7056
E-mail: ebarton@seyfarth.com

*Attorneys for Edgefield Holdings, LLC*

22132142v.1